L. A. ANDREW, State Superintendent of Banking, Appellee, v. RICHARD RIVERS et al., Appellees; J. H. VAN VLIET, Trustee, Appellant.

JANUARY 15, 1929.

*H. E. De Reus* and *Dick C. Van Zante*, for appellant.

*Korf & Korf*, for L. A. Andrew, receiver, appellee.

No appearance for the other appellees.

MORLING, J.—The evidence ranges over an extensive field, and we need not refer to it further than as it is relevant to appellant Van Vliet's contentions that plaintiff should have  brought his action within seven days after notice of the bulk sale under which Van Vliet got title, and that plaintiff's right to proceed under the Bulk Sales Law is "barred by limitation, acquiescence, waiver, laches, and estoppel."

Rivers owned a lot and building, in which he kept a stock of merchandise and fixtures. He was owing Burton & Company State Bank $8,500. On November 21, 1923, Rivers gave the bank (or its receiver) a note, due March 1, 1926, for this indebtedness, $8,500, and a mortgage on the lot, to secure its payment. On May 4, 1925, he gave a note for $8,500, due May 14, 1926 (we infer from the arguments, "collateral" for the same debt), and to secure it, gave a chattel mortgage on the fixtures. $300 was paid on the principal, reducing it to $8,200. The bank went into the hands of the superintendent of banking, as receiver,—when, does not appear. C. A. Porter was the examiner in charge. H. C. Korf was the attorney for the receiver. On January 8, 1926, Rivers and Kaldenberg made a written agreement, whereby Rivers agreed to convey to Kaldenberg the store building, fixtures, and stock, and Kaldenberg agreed to convey to Rivers his equity in a tract of land, and pay Rivers $3,500 in cash "upon Rivers' completion of payment of the wholesale bills"

then "outstanding against the stock." Deeds were to be made on the payment of the wholesale bills, and on payment of the $3,500. The agreement recited that "possession of the premises and stock of goods has been given to" Kaldenberg. The agreement recited the mortgages on the lot, building, and fixtures for $8,200, and required Kaldenberg to pay them, together with interest from January 9, 1926. At the time this agreement was made, Kaldenberg was owing Van Vliet a pre-existing debt of $1,600 (not due), and, in order to get payment of this debt out of the property which Kaldenberg was to get in the trade, Van Vliet advanced Kaldenberg the further sum of $3,000, with which to make the payment to Rivers and enable Rivers to pay his indebtedness to wholesalers. Rivers furnished a list of such debts. Van Vliet advanced the money to pay them, and they were paid accordingly. On January 11, 1926, Rivers gave to Kaldenberg a bill of sale of the stock and fixtures. The same date, Kaldenberg gave to Van Vliet, as security, a bill of sale of the same property. On January 13, 1926, Rivers, in advance of its maturity, paid to Porter the interest to January 9, 1926, on the $8,200. On February 2, 1926, Kaldenberg resold the stock to Boat, and Van Vliet made a bill of sale of it to Boat. As a part of this transaction, Boat gave his check for $3,500 for the money which he was to pay for the stock. On February 3, 1926, Porter notified Boat that plaintiff was a creditor of Kaldenberg's, and was holding a lien on the stock until the indebtedness of Kaldenberg to plaintiff should be paid. Boat thereupon stopped payment on his $3,500 check. Boat seems to be satisfied with the protection he has obtained from stopping payment of his check and from the decree in the lower court, and his interests, are not involved in this appeal. We therefore give the sale to him no further attention.

On February 18, 1926, Porter notified Kaldenberg that the $8,200, with interest, would be due on March 1st, and demanded payment accordingly. On March 5, 1926, this action was commenced.

Appellant Van Vliet assigns error as follows:

"1. The plaintiff failed to commence a proceeding within seven days after notice of the sale, and thereafter is entitled to no relief under the Bulk Sales Law.

"2. The plaintiff failed to commence an action until almost

six weeks after notice of the sale, and is now barred by limitation, acquiescence, waiver, laches, and estoppel.

"3. The lien of the appellant J. H. Van Vliet, trustee, under his chattel mortgage is superior to the rights of the plaintiff under the Bulk Sales Law."

Appellant thus summarizes his argument:

"(1) That, due to plaintiff's failure to proceed within seven days after notice of the Rivers-Kaldenberg sale, he is entitled to no relief as a creditor of Richard Rivers', under the Bulk Sales Law, but is left to his ordinary remedies.

"(2) That, due to plaintiff's failure to proceed until almost six weeks after notice of the Rivers-Kaldenberg sale, he is now barred by limitation, acquiescence, waiver, laches, and estoppel to receive relief under the Bulk Sales Law, as a creditor of Richard Rivers', and is left to his ordinary legal remedies.

"(3) That, as between the plaintiff and the appellant, the rights of the appellant under his chattel mortgage are superior to the rights of the plaintiff, (a) for the above reasons, when plaintiff attempts proceedings under the Bulk Sales Law, as a creditor of Richard Rivers, (b) due to the equities between the parties plaintiff and appellant when plaintiff attempts to proceed under the Bulk Sales Law, either as a creditor of Richard Rivers or John Kaldenberg."

The evidence relating to the claim of estoppel, acquiescence, waiver, and laches may be sufficiently outlined as follows: William Terpstra testifies that he represented Kaldenberg in the deal with Rivers; that he asked Porter "whether the bank had any mortgage on the stock of goods, and he said they did not; and the same night, I came down to Kellogg and wanted the fixtures released. You [H. C. Korf] told me you would take $2,500 and release the fixtures. I think Mr. Porter also told me he wouldn't stand for the stock of goods' being moved out of the building. * * * When I said to Rivers, or to Kaldenberg, that the stock of goods was clear, I was simply communicating to him the fact that Mr. Porter had told me the bank had no mortgage on the stock. * * * that is what I meant by telling them that the stock of goods was clear." Terpstra says that Porter told him that he "had a mortgage on this building, and he told me, 'Yes,' he had a mortgage on the building of $8,500, and $300

paid; and I wanted to know if he had a lien on the stock, and he said, 'no,' the stock was clear.'' Kaldenberg says that he never talked to. Porter or to Korf. about the stock of goods in connection with the Rivers deal, but that the contract was prepared in Korf's office, and he thinks with Korf's assistance. He says:

''I signed a contract that indicated he owed the bank $8,200 that wasn't due. The way I understood it was, all that he owed that was due was $3,500. * * * Q. Well, you understood that, because the bank had a mortgage, that the bank had no claim under the Bulk Sales Law,—is that it? * * * A. Yes, sir. I said 'yes' a while ago on this account: because Terpstra, my agent, had said that the receiver said this stock was clear. * * * I assumed this debt to the bank, the $8,200 in my contract. I thought he would have money or means to pay it.''

Van Vliet testifies:

''We had the understanding through Mr. Kaldenberg that this money was to be applied to the wholesale bills,—the wholesale bills that were outstanding at that time. * * * All the time, I knew there was $8,200 of indebtedness that Rivers owed. I did not know there wasn't any provisions made under the bulk sales to take care of that. I did not even know there was a Bulk Sales Law. * * * I called Mr. Porter,—that wasn't till after somebody had stopped payment on his check. I don't remember the words he used, but the effect of it was, Mr. Porter told me that they had a claim on this stock of goods. Mr. Boat told me the reason why he stopped payment was because Porter was claiming that the bank had a claim on that stock of goods under the Bulk Sales Law.''

Porter testifies that Terpstra called on him several times, trying to get a discount, and asking if the stock was clear.

''I told him we had no mortgage, but were holding it under the Bulk Sales Law. I told him that every time he asked me, and he asked me probably a dozen times.''

He says that, as soon as the deal was completed, he told Mr. Korf to bring this action, but ''the delay was because you [Korf] were busy, and did not have an opportunity to bring this action.'' Porter had previous knowledge that Rivers was

trying to dispose of the stock. He knew that Kaldenberg was one of the prospective purchasers. Porter, however, was away when the trade was made. He found Kaldenberg in possession of the stock about the middle of January.

There was no estoppel by misrepresentation, for a number of reasons. The sale under which Van Vliet claims, was made to Kaldenberg; and the advances by Van Vliet to Kaldenberg and the security given by Kaldenberg to Van Vliet for these advances and for a pre-existing debt were made and taken in the process of concluding the sale from Rivers to Kaldenberg. Kaldenberg and Van Vliet were as fully informed as was the plaintiff of the material facts: namely, that Rivers was indebted to plaintiff; that no detailed inventory or list of creditors was made, or notice given, as prescribed by Section 10008, Code of 1924. Kaldenberg and Van Vliet gave no thought to the Bulk Sales Law, and Van Vliet says he knew nothing about that law. There was no misrepresentation concerning compliance with it, and no concealment of Rivers's debt to plaintiff or of purpose on the part of plaintiff to resort to that law. Kaldenberg and Van Vliet had specific information of Rivers's debt to plaintiff. They knew it was unpaid. Van Vliet omitted no act, changed no position, and sustained no prejudice from anything done by plaintiff. Plaintiff in no wise, expressly or by implication, renounced or disclaimed his rights under the Bulk Sales Law. On the contrary, the testimony of Kaldenberg's agent is that Porter told him "he would not stand for the stock of goods' being moved out of the building," and Porter's undisputed testimony is that he told the agent that plaintiff was "holding it under the Bulk Sales Law." Appellant argues that this statement, made in this form, must have referred to a date after the sale. The evidence does not bear out this contention.

Plaintiff alleges that he is receiver under appointment of the court. Van Vliet takes issue on this allegation. There is no proof whether plaintiff is receiver by virtue of his office as  superintendent of banking, or whether he is a chancery receiver. He sues as receiver, and the inference would be that he sues as a receiver in chancery. If the plaintiff is acting as a statutory receiver, by virtue of his office, no authority in Porter, the examiner, to waive plaintiff's rights under the Bulk Sales Law is shown, and

none can be presumed. (See *Deariso v. Mobley* [Ga. App.], 143 S. E. 915.) If plaintiff is a chancery receiver, then the assets of the bank are *in custodia legis*. Plaintiff is merely an arm or officer of the court, and may not, without authority from the court, waive the provisions of the Bulk Sales Law. No such authority is shown. Neither plaintiff nor the bank examiner had authority to make such waiver. Code of 1927, Section 9239; *Sherman v. Linderson*, 204 Iowa 532; *Baxter v. Baxter*, 204 Iowa 1321; *Leach v. State Sav. Bank*, 202 Iowa 97; *Leach v. Farmers & Merch. Sav. Bank*, 207 Iowa 471; *First Nat. Bank v. White Ash Coal Co.*, 188 Iowa 1227; 34 Cyc. 187, 208, 242, 248, 274. The knowledge which the attorney is claimed to have obtained from drawing the contract, if chargeable to plaintiff, is subject to the same infirmities. But it is not chargeable to plaintiff. It was not gained in the exercise of the attorney's employment by plaintiff, had no reference thereto, and was not within the scope of his authority. 6 Corpus Juris 638 *et seq.*

There was no equitable or quasi estoppel; for plaintiff has at no time taken inconsistent positions, nor has he expressly or by implication waived his rights under the Bulk Sales Law. Waiver is the intentional relinquishment or abandonment of a known right. Acquiescence is a form of ratification (express or implied) or estoppel. Ratification of the act of another is the adoption or giving validity to it by the one in whose behalf it was done. The sale by Rivers was made in his own behalf, and for himself,—not for plaintiff. If the statutory requirements are not observed, a bulk sale is, by force of the statute, constructively fraudulent as to creditors. One creditor, so far as his own rights are concerned, may waive the infirmity in the sale, and preclude himself from attacking it; but he cannot give it validity as to other creditors for whom he has no authority to act,—cannot, strictly speaking, ratify it. Porter (or plaintiff) did not, by silence or failure to announce his purpose or otherwise, elect to waive the invalidity of the sale or to recognize it as valid; for he was persistently asserting plaintiff's right to pursue the property under the Bulk Sales Law. Acquiescence presupposes knowledge and assent. Acquiescence is equivalent to assent, inferred from silence with knowledge, or from encouragement. One does not assent to an act which he knows not of, or which he cannot prevent. While Porter pre-

350

viously knew of Rivers's efforts to dispose of the stock, he did not know of or authorize or acquiesce in any intended sale in disregard of the Bulk Sales Law. He was not present at, and did not then or previously know of, the sale to Kaldenberg, or of the loans of Van Vliet to Kaldenberg, or of the bill of sale given by Kaldenberg to Van Vliet; nor did he, by any suggestion of waiver of plaintiff's rights as a creditor, or by election not to insist on the invalidity of the sale, encourage sale to Kaldenberg without observing the statutory requirements. For these reasons, as well as for those which have been stated with reference to the claim of estoppel, there was no acquiescence. *McKeon v. City of Council Bluffs*, 206 Iowa 556; *Dwight v. City of Des Moines*, 174 Iowa 178, 181, et seq.; 21 Corpus Juris 1113 et seq., 1202 et seq., 1216 et seq. Plaintiff was prompt and consistent in the assertion of his rights. Van Vliet was placed in no worse position on account of the delay. The delay was not unreasonable. There was no laches. *McKeon v. City of Council Bluffs*, 206 Iowa 556.

Appellant Van Vliet urges that plaintiff received full notice of sale, price, terms, and conditions, and that, whether he got  that information before or after the sale, he had but seven days in which to elect to avoid it. Appellant relies upon *Schramm & Schmieg Co. v. Shope*, 200 Iowa 760, and *Lietchfield Mfg. Co. v. Heinicke*, 200 Iowa 958. Neither of these decisions nor the statute limits creditors to seven days after acquiring knowledge of sale in violation of the Bulk Sales Law in which to make election or bring action. In the *Schramm & Schmieg Co.* case, it was found as a fact that plaintiff elected to acquiesce in the sale, and irrevocably waived its statutory right. In the *Lietchfield Mfg. Co.* case, the plaintiff, instead of electing to treat the sale as invalid under the Bulk Sales Law, asserted superior title under a conditional sale contract, and neglected to exercise its right of election to invalidate the sale within a reasonable time. Meantime, others had purchased the stock, and acted to their prejudice. While the creditor, after acquiring, actually and constructively, full knowledge of the facts, and, resultantly, of his rights, must, within reasonable time, determine and announce his course, if he would take advantage of the statute, and while his neglect within reasonable time to manifest an

election to hold the sale invalid may, when prejudice results, amount to waiver or estoppel or acquiescence, or call into operation the defense of laches, the question as to what is reasonable time is ordinarily one of fact, and not of law. A period of seven days may, in a particular case, be a reasonable time. It is not necessarily such. In this case, plaintiff's attitude was made known immediately.—*Affirmed.*

ALBERT, C. J., and STEVENS, FAVILLE, and DE GRAFF, JJ., concur.

WAGNER, J., not participating.