Bernard BELL, Appellant,

v.

Harold BROWN, Secretary, Department of Defense.

No. 75–1378.

United States Court of Appeals, District of Columbia Circuit.

Argued March 10, 1976.

Decided May 20, 1977.

Bill Lann Lee, New York City, with whom Ronald A. Karp, Washington, D. C., Charles Stephen Ralston and Melvyn R. Leventhal, New York City, were on the brief, for appellant.

John W. Polk, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and John R. Dugan, and James F. McMullin, Asst. U. S. Attys., Washington, D. C., at the time the brief was filed, were on the brief, for appellee.

Before LEVENTHAL, ROBINSON and ROBB, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The Equal Employment Opportunity Act of 1972[1] extended broadly to federal employees the protections against employment discrimination previously conferred generally upon private-sector employees[2] by Title VII of the Civil Rights Act of 1964.[3] Section 717(c) of thus-amended Title VII enables an aggrieved federal employee to bring a civil suit in a federal district court

1. Pub.L. No. 92–261, 86 Stat. 103 (1972), as amended, 42 U.S.C. §§ 2000e et seq. (Supp. V 1975).

2. See, e. g., Morton v. Mancari, 417 U.S. 535, 547, 94 S.Ct. 2474, 2481, 41 L.Ed.2d 290, 298 (1974); Hackley v. Roudebush, 171 U.S.App. D.C. 376, 404, 410 n.138, 416, 520 F.2d 108, 136, 142 n.138, 148 (1975); Douglas v. Hampton,

168 U.S.App.D.C. 62, 67, 512 F.2d 976, 981 (1975); Womack v. Lynn, 164 U.S.App.D.C. 198, 504 F.2d 267 (1974).

3. Pub.L. No. 88–352, tit. VII, §§ 701 et seq., 78 Stat. 253 (1964), as amended, 42 U.S.C. §§ 2000e et seq. (1970).

within 30 days after receipt of notice of final administrative action on the discrimination claim.[4] The question on this appeal is whether the 30-day period therefor was triggered, prior to the employee's personal acquisition of notice, by transmittal of notice to the office of the employee's legal representative. We answer that question in the negative.

### I

The salient facts are not in dispute. On November 14, 1972, appellant, then employed as a computer operator by the Defense Supply Agency of the Department of Defense,[5] filed an administrative complaint charging racial discrimination in work assignments, training opportunities and promotions.[6] Included in the complaint was appellant's statement that he had retained Peter D. Bewley and Roderick Boggs,[7] members of the local bar, to represent him.[8] After the Agency investigated the matter and issued notice of a proposed disposition not to appellant's liking, he demanded and was accorded a hearing before a complaints

examiner, which began on October 24, 1973. Shortly before, on October 2, Richard W. Cass, an attorney in the same firm with Mr. Bewley, had advised the examiner by letter that he and Mr. Bewley would represent appellant and Johnnie Greene, a complaining co-employee,[9] at the upcoming hearing.[10]

The Agency announced its decision on April 17, 1974, finding no discrimination. An administrative appeal was then taken to the Appeals Review Board of the Civil Service Commission which, on August 27, 1974, affirmed the Agency.[11] The Board's decision warned that under Commission regulations it constituted the final administrative step, and informed that a dissatisfied complainant was statutorily authorized to sue in an appropriate federal district court within 30 calendar days of his receipt of the decision.[12]

On the next day, a copy of the decision was sent by registered mail, with a return receipt requested, to Mr. Cass.[13] It arrived at his office on August 30, and was accepted for Mr. Cass by a person whose signature appears in the "addressee's agent" box of

---

**4.** "Within thirty days of receipt of notice of final action taken by a department, agency or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, . . . an employee . . . ., if aggrieved by the final disposition of his complaint, . . . may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." Equal Employment Act of 1972, tit. VII, § 717(c), 42 U.S.C. § 2000e–16(c) (Supp. V 1975).

**5.** During administrative consideration of appellant's discrimination complaint, his employment at the Defense Supply Agency was terminated. That action was contested within the Agency but no further, and thus is not encompassed by this litigation. In view of appellant's claim for backpay consequent upon the discrimination alleged, text *infra* at note 23, the case did not become moot by reason of appellant's discharge.

**6.** Appendix (App.) 7–8.

**7.** See note 10 *infra.*

**8.** App. 8. See note 10 *infra* and accompanying text.

**9.** Greene's discrimination complaint was filed on November 17, 1972. His complaint was consolidated with appellant's throughout the administrative proceedings. He is not, however, a party to this litigation.

**10.** The letter is reproduced at App. 23. Enclosed with the letter was Greene's "Designation of Representative" form naming these two attorneys. App. 24. The letter noted that appellant had not gotten such a form but that he would designate the same two as his representatives in a separate letter. Appellant states, Brief for Appellant at 4, and appellee does not deny, that the letter was never written. The status of Mr. Boggs, text *supra* at note 7, from here on is something of a mystery.

**11.** *Bernard Bell,* (CSC App.Rev.Bd. Aug. 27, 1974) (unreported), App. 16–22.

**12.** *Id.,* App. 22.

**13.** Affidavit of William P. Berzak, App. 13.

the receipt.[14] Another copy of the decision was sent, apparently by ordinary mail, to appellant at his home. We do now know, and likely no one could be certain, as to when it was delivered. In any event, appellant did not see it until September 3, when he returned from a vacation begun on August 30.[15]

The record gives no indication as to when either of appellant's three legal representatives[16] may actually have learned of the Board's decision.[17] It is clear on the record, however, that appellant never heard from any of them on that score,[18] and that is not surprising. Appellant had been told in mid-August by Mr. Cass that he would be leaving the country for an extended period later that month or early the next.[19] So, from mid-August onward, appellant avows, he no longer considered Mr. Cass as his attorney, and then began to seek new counsel.[20]

On October 1, 1974, appellant filed a *pro se* complaint in the District Court against the Secretary of Defense,[21] charging discrimination violative of Title VII,[22] and seeking declaratory relief and backpay.[23] The court dismissed the action for lack of subject-matter jurisdiction, concluding that it had been commenced beyond the 30-day period specified by Section 717(c), and that that section preempts any other basis of federal jurisdiction.[24] In view of the Supreme Court's recent decision in *Brown v. General Services Administration,*[25] holding that Section 717 affords the exclusive judicial remedy for claims of discrimination in federal employment, we have before us only the issue of timeliness of appellant's suit.

## II

Section 717(c) authorizes a covered federal employee to file a civil action in an appropriate federal district court "[w]ithin thirty days of receipt of notice of final [administrative] action taken" on his discrimination complaint, either by the employing agency or by the Civil Service Commission on an appeal from the agency's decision, if he is aggrieved by the administrative disposition.[26] Since the "receipt of notice," and not its mailing, is expressly made the event inaugurating the 30-day period, plainly it begins to run only from the time the notice comes into the recipient's hands.[27] The statutory language,

14. App. 14.

15. Affidavit of Bernard Bell, App. 29.

16. See note 10 *supra* and accompanying text.

17. The record is silent as to whether the Board transmitted its decision to counsel other than Mr. Cass, and as to whether there was any intercommunication among them.

18. Affidavit of Bernard Bell, App. 29.

19. *Id.* This is confirmed by Mr. Bewley's affidavit, which states that "at some time during the latter part of July, 1974, Richard Cass indicated to me that he could not continue to represent Bernard Bell," and that "it was my understanding that Richard Cass had communicated the above fact to Bernard Bell at some time during the month of August, 1974." App. 30.

20. Affidavit of Bernard Bell, App. 29.

21. Appellant was later represented in the District Court by counsel other than those on this appeal.

22. Appellant also claimed infringement of the Civil Rights Act of 1866, ch. 114, § 16, 16 Stat. 144, 42 U.S.C. § 1981 (1970); of the Fifth Amendment; and of Exec. Order No. 11478, 3 C.F.R. 803 (1969), amended by Exec. Order No. 11590, 3 C.F.R. 153 (1971), reprinted in 42 U.S.C. § 2000e App., at 10297 (1970). Jurisdiction was invoked under 28 U.S.C. §§ 1331(a), 1343(4), 2201 (1970). See text *infra* at note 26.

23. See notes 4 and 5 *supra.*

24. *Bell v. Schlesinger,* Civ. No. 74–1439 (D.D.C. Feb. 5, 1975) (unreported), App. 30.

25. 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

26. See note 4 *supra; Coles v. Penny,* 174 U.S. App.D.C. 277, 280–281 & n.7, 531 F.2d 609, 612–613 & n.7 (1976). See also 42 U.S.C. § 2000e–5 (1970). Administrative inaction on the complaint may also ripen the matter for suit pursuant to § 717(c). See full text of 42 U.S.C. § 2000e–16(c) (Supp. V 1975); 5 C.F.R. § 713.281 (1976).

27. This has been the judicial conclusion even under the much less clear provision of § 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1) (Supp. V 1975), relating to suits by em-

however, is noncommittal as to whether receipt by a representative is equivalent for this purpose to receipt by the employee, and the legislative history, though extensive,[28] yields no significant indication in this regard. Nonetheless, we do not suffer from inadequate assistance toward the proper outcome here.

█ The initial guidepost is the consideration that "where congressional purpose is unclear, courts have traditionally resolved ambiguities in remedial statutes in favor of those whom the legislation was designed to protect."[29] We have heretofore recognized "that Title VII is remedial in character and should be liberally construed to achieve its purposes";[30] "[f]or this reason," we have observed, " 'courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity, resolved them in favor of the complaining party.' "[31] "That approach," we have added, "reflects not only the manifest importance of Title VII rights to complaining parties, but also the broad national commitment to eliminating such discrimination and the importance of private suits in fulfilling that commitment."[32]

Not long ago, we were confronted with a problem somewhat similar to the one before us. In *Coles v. Penny*,[33] a federal employee was advised by the Board that administrative review of his discrimination complaint was complete but was not told that he had a right to sue within 30 days. We held that until the employee was suitably informed on both of those counts, the 30-day period remained dormant. We stated our belief that "the term 'notice,'[34] no less than the phrase 'may file a civil action,'[35] requires an interpretation animated by the broad humanitarian and remedial purposes underlying the federal proscription of employment discrimination."[36] We think the word "receipt"—in the same statutory specification[37]—deserves the same treatment.

█ A reading of "receipt" as a call for personal receipt by the affected employee harmonizes well with the fundamental objectives of Section 717(c). It comports, too, with the everyday realities of Title VII litigation. Speaking in *Coles* to "the broad structure and purposes of Title VII,"[38] we noted that "[t]he scheme established by Congress relies upon laymen, operating without legal assistance, to initiate both administrative complaints and lawsuits,"[39] and admonished that "[procedural] technicalities are particularly inappropriate in [such] a statutory scheme. . . ."[40] We

---

ployees in the private sector. See *Russell v. American Tobacco Co.*, 528 F.2d 357, 365 (4th Cir. 1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1666–1667, 48 L.Ed.2d 176 (1976); *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 404 (5th Cir. 1974), *reversed on other grounds*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Miller v. International Paper Co.*, 408 F.2d 283, 287 (5th Cir. 1969); *Plunkett v. Roadway Express, Inc.*, 504 F.2d 417, 418–419 (10th Cir. 1974). See also *Gates v. Georgia-Pacific Corp.*, 492 F.2d 292, 295 (9th Cir. 1974).

28. See S.Rep. No. 92–415, 92d Cong., 1st Sess. (1971); H.R.Rep. No. 92–238, 92d Cong., 1st Sess. (1971); 117 Cong.Rec. 32088–32114 (1971); 118 Cong.Rec. 4907–4949, 7166–7170, 7563–7573 (1972).

29. *Laffey v. Northwest Airlines, Inc.*, No. 74–1791 (D.C.Cir. Oct. 20, 1976), at 88.

30. *Coles v. Penny, supra* note 26, 174 U.S.App. D.C. at 283, 531 F.2d at 615.

31. *Id.*, quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 461 (5th Cir. 1970).

32. *Coles v. Penny, supra* note 26, 174 U.S.App. D.C. at 283, 531 F.2d at 615.

33. *Supra* note 26.

34. See note 4 *supra*.

35. See note 4 *supra*.

36. *Coles v. Penny, supra* note 26, 174 U.S.App. D.C. at 284, 531 F.2d at 616. See also *Allen v. United States*, 542 F.2d 176, 178–180 (3d Cir. 1976). But see *Eastland v. TVA*, 547 F.2d 908, 912–914 (5th Cir. 1977).

37. See note 4 *supra*.

38. 174 U.S.App.D.C. at 282, 531 F.2d at 614.

39. *Id.* (citations omitted).

40. *Id.* at 283, 531 F.2d at 615, quoting *Love v. Pullman Co.*, 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679, 685 (1972).

declared, accordingly, that " 'legislation which evinces such concern over the burden imposed upon a working man or woman seeking to enforce Title VII rights requires a practical and reasonable construction of its enforcement provisions.' "[41] Given that construction, Section 717(c) would interpose no time barrier to appellant's litigative effort in the District Court.

Appellant was sent a copy of the Board's decision which informed him that a "complainant[ ] . . . not satisfied with this decision" had a statutory right "to file a civil action in an appropriate U. S. District Court within thirty (30) calendar days of *his* receipt of this decision."[42] Nothing in the decision suggested that the period might be shortened by earlier receipt of another copy by one of his former legal representatives. We deal not with what a lawyer might have perceived as a possible problem and taken precaution against, but with what one untrained in the law might reasonably conclude;[43] and in this light it can hardly be disputed that appellant was prudent in the belief that he had 30 days from the time that he first saw the decision to begin his *pro se* endeavor in court, or that he was understandably dismayed by the District Court's determination that the attempt came two days too late.

As much here as in *Coles,* "we doubt that Congress intended to provide a judicial remedy—one [which] require[s] *de novo* consideration—which is so easily forfeited by those whose rights it vindicates."[44] And just as emphatically here as there, we say that "[a] statutory construction likely in so many cases to render meaningless the provision of a judicial remedy is hardly the 'practical and reasonable' one that we should seek."[45] We think Section 717(c) summons a reading that would avoid these incongruities, and would permit appellant's lawsuit to continue.

## III

There is another guidepost to proper interpretation of the "receipt of notice" upon which Section 717(c) trades. The Civil Service Commission's interpretations of that section have consistently reflected the theme that the 30-day period for suit is not set in motion until notice of the final administrative action is obtained by the affected employee, irrespective of when it might reach a representative. That should dispel any lingering doubt as to the construction that the section should command in the courts.

Shortly after enactment of Section 717, the Commission, in exercise of the rulemaking power with which it is expressly endowed,[46] promulgated a series of regulations dealing with the notice referred to therein. One, spelling out the statutory right to sue and applicable time limitations, spoke broadly of receipt of notice by a complaining employee but did not mention acquisition of notice by a representative at all.[47] Another regulation provided that the employee be told of his right to sue and of the 30-day time limit but, once again, said nothing about a representative.[48] Still another—and manifestly more indicative—regulation specifically required that both the complaining employee and his representative, if there were one, be sent copies

41. *Coles v. Penny, supra* note 26, 174 U.S.App. D.C. at 283, 531 F.2d at 615, quoting *Huston v. General Motors Corp.,* 477 F.2d 1003, 1008 (8th Cir. 1973).

42. *Bernard Bell, supra* note 11, App. 22 (emphasis supplied).

43. See text *supra* at note 39. Compare *Coles v. Penny, supra* note 26, 174 U.S.App.D.C. at 283, 531 F.2d at 615.

44. *Id.*

45. *Id.*

46. See 42 U.S.C. § 2000e–16(b) (Supp. V 1975). The Commission drew also upon other legislation and several executive orders as additional sources of rulemaking authority. 37 Fed.Reg. 22717 (1972).

47. 37 Fed.Reg. 22723 (1972), as amended by 37 Fed.Reg. 25699 (1972), 5 C.F.R. § 713.281 (1976).

48. 37 Fed.Reg. 22723 (1972), as amended by 37 Fed.Reg. 25699 (1972), 5 C.F.R. § 713.282 (1976).

of the administrative decision, together with notice of the right to institute a civil action.[49]

■ These regulations, which persist today in identical form,[50] are highly significant to the construction to be attributed to "receipt of notice" in Section 717(c).[51] As ever so recently we explained,

[a]n administrative interpretation of a statute by an agency entrusted with its administration commands great deference in the courts.[52] "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.' "[53] Where the agency is authorized to issue regulations to which Congress has imparted the force of law, . . . its interpretation is entitled to an even

larger measure of esteem.[54] And "[t]o sustain the [agency's] application of [the] statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings."[55]

The question, we repeat, is whether the arrival of the Board's decision in Mr. Cass' office, prior to actual receipt by appellant of his copy, launched the 30-day period for suit. As invariably interpreted by the Commission in its regulations, Section 717(c) envisions transmittal of notice of final administrative action both to the affected employee and his representative, if any, and in either event personal knowledge by the employee of the action.[56] Since this goal obviously cannot be achieved any sooner than the employee somehow learns of the administrative action, it seems clear that the statutory period is not triggered by receipt of notice by the representative on an earlier

---

**49.** 37 Fed.Reg. 22722 (1972), as amended by 39 Fed.Reg. 32540 (1974), 5 C.F.R. § 713.234 (1976), in relevant part providing:

The board shall issue a written decision setting forth its reasons for the decision and shall send copies thereof to the complainant, his designated representative, and the agency. . . . The decision of the board . . shall contain a notice of the right to file a civil action in accordance with Section 713.-282.

**50.** See references in notes 47–49 *supra.*

**51.** We emphasize that the administrative interpretations to which we have pointed appear as regulations formulated contemporaneously with passage of the Equal Employment Opportunity Act of 1972, see references in notes 47–49 *supra,* pursuant to express rulemaking power, as distinguished from interpretive declarations of lesser stature and authority. See *General Elec. Co. v. Gilbert,* 429 U.S. 125, 140–143, 97 S.Ct. 401, 410–411, 50 L.Ed.2d 343, 357–358 (1976), and text *infra* at note 54.

**52.** Citing *Griggs v. Duke Power Co.,* 401 U.S. 424, 433–434, 91 S.Ct. 849, 854–855, 28 L.Ed.2d 158, 165 (1971); *United States v. City of Chicago,* 400 U.S. 8, 10, 91 S.Ct. 18, 20, 27 L.Ed.2d 9, 12–13 (1970); *Udall v. Tallman,* 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616, 619 (1965).

**53.** Quoting *Power Reactor Co. v. Electrical Workers Int'l Union,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924, 932 (1961), in turn

quoting *Norwegian Nitrogen Prods. Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796, 807 (1933), in turn quoted in *Udall v. Tallman, supra* note 52, 380 U.S. at 16, 85 S.Ct. at 801, 13 L.Ed.2d at 625.

**54.** Citing *General Elec. Co. v. Gilbert, supra* note 51, 429 U.S. at 140–143, 97 S.Ct. at 410–411, 50 L.Ed.2d at 357–358.

**55.** *American Horse Protection Ass'n v. United States Dep't of Interior,* 551 F.2d 432 (D.C.Cir. 1977), last quoting *Unemployment Compensation Comm'n v. Aragon,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136, 145 (1946), in turn quoted in *Udall v. Tallman, supra* note 52, 380 U.S. at 16, 85 S.Ct. at 801, 13 L.Ed.2d at 625.

**56.** In this regard, we note another manifestation of the Commission's understanding of § 717, though it lacks parity with its regulations. See note 51 *supra.* The Commission's designation-of-representative form appearing of record, despite the broad authority which it confers upon the representative, incorporates the statement that the designor "undertand[s] that [he] continue[s] to be responsible for taking all necessary action in connection with [his] complaint of discrimination." App. 24. This burden obviously extends to institution of suit *pro se* by a dissatisfied employee then no longer represented, and its effective discharge just as plainly necessitates prior personal notice of the administrative action to the employee.

date. In our view, these highly authoritative interpretations are to be accepted unless overborne by countervailing considerations.

## IV

 In support of his position that appellant's lawsuit was time-barred, the Secretary argues that the 30-day requirement is jurisdictional,[57] that it must be strictly construed,[58] and that the period starts when counsel for a complaining employee receives notice because a party is deemed to have "notice of all facts, notice of which can be charged upon the attorney"[59]—the proposition to which our dissenting colleague subscribes. While we do not doubt the imputation of notice from attorney to client ordinarily,[60] we would have reservations as to the applicability of the doctrine here.[61] We need not pursue the inquiry in that regard, however, for in any event the Secretary's syllogism fatally neglects the critical question whether, in tying the commencement of the suit-period to "receipt of notice,"[62] Congress contemplated a role for construc-

tive notice in Section 717(c) cases that would override considerations arguing for actual notice to the litigant.

Title VII bottoms its procedural mechanisms upon the assumption that ofttimes there will be no lawyer to attend to their functioning on the employee's behalf. As we have heretofore pointed out, "[t]he scheme established by Congress relies upon laymen, operating without legal assistance, to initiate both administrative complaints and lawsuits. . . ."[63] That, we have said, is a factor calling strongly for an interpretation favoring actual notice to the affected employee personally.[64] It is also a negation of the idea that Section 717(c) geared as it is to the exigencies of litigation conducted by laymen, tolerates imputation of notice when a lawyer for the employee happens to be on the scene. As one court has observed, "[t]he courts have consistently construed the Act liberally to effectuate its remedial purpose, and we think this purpose would be poorly served by the application of a 'constructive receipt' doctrine to the notification procedure."[65] Only if we

---

**57.** We do not investigate the essential nature of the limitation period since the Secretary's characterization is proffered simply to buttress his call for strict construction. Compare *Coles v. Penny, supra* note 26, 174 U.S.App.D.C. at 281–282 & n.13, 531 F.2d at 613–614 & n.13.

**58.** Compare *id.*

**59.** Brief for appellee at 5, quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955, 958 (1879).

**60.** *E. g., Link v. Wabash R.R.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, 740 (1962).

**61.** Notice is not imputed to the client unless it comes to the attorney within the duration and scope of the attorney-client relationship. *Andrew v. Rivers*, 207 Iowa 343, 223 N.W. 102, 105 (1929); *Centreville Bldg. & Loan Ass'n v. Gollin*, 117 N.J.Eq. 412, 176 A. 356, 358 (1935). See also *L. C. Bates Co. v. Austin, Nichols & Co.*, 143 Conn. 392, 122 A.2d 795, 796 (1956); *Shafer v. United States Cas. Co.*, 90 Wash. 697, 156 P. 861, 864 (1916); *Northwestern Realty Co. v. Hardy*, 160 Wis. 324, 151 N.W. 791, 792 (1915). The record amply supports appellant's position that Mr. Cass withdrew prior to announcement of the Board's decision. See text *supra* at notes 16–20 and notes 17, 19 *supra*; compare *Vindigni v. Meyer*, 441 F.2d 376 (2d

Cir. 1971). We are mindful that Mr. Cass and Mr. Bewley practiced in the same law firm, and we presume that the decision was duly transmitted to Mr. Bewley in Mr. Cass' absence. That, however, would not settle the question whether the severance of the relationship with appellant by Mr. Cass, whom the record portrays as the moving spirit in appellant's earlier representation, did not also terminate Mr. Bewley's connection with the case. As for Mr. Boggs, seemingly also an attorney for appellant at some stage, see note 10 *supra*, it suffices to point out that nothing in the record suggests that he was ever sent a copy of the Board's decision or informed thereof.

**62.** See note 4 *supra*.

**63.** *Coles v. Penny, supra* note 26, 174 U.S.App.D.C. at 282, 531 F.2d at 614. See also *Love v. Pullman Co., supra* note 40, 404 U.S. at 527, 92 S.Ct. at 619, 30 L.Ed.2d at 685; *Huston v. General Motors Corp., supra* note 41, 477 F.2d at 1008.

**64.** See text *supra* at *notes* 38–41.

**65.** *Franks v. Bowman Transp. Co., supra* note 27, 495 F.2d at 404. In that case, a notice mailed by the Equal Employment Opportunity Commission was never seen by the charging

were insensitive to the danger of a contrary view—which this case all too well illustrates—could we disagree.

■ The evident purpose of the notice requirement is to inform that the administrative process has run its course and to admonish that the brief period for instituting a lawsuit is about to commence. Like the Civil Service Commission, we think Section 717(c) contemplates service of the notice on the employee.[66] That construction is reasonable enough in light of the many instances of employees never having counsel, and those wherein there may be doubt as to the extent of legal representation— for the administrative phase only, or for all purposes. We share also the position that Section 717(c) additionally requires service on counsel for the employee when so represented [67] as "a practical necessity if the thirty-day filing requirement is not to become an unintended procedural booby-trap." [68] And especially in view of the tight time limitation on suit, filing, the reality that counsel are often unavailable—for example, because away on business or vacation—and the prospect that a great deal of employment-discrimination litigation will be handled by solo practitioners rather than large law firms, there surely would be an-

other unintended booby-trap if the doctrine of imputed notice were allowed to displace the statutory assumption that the employee will be given notice both personally and actually.

We thus find the Secretary's argument unacceptable. Like the Fifth Circuit, we believe "that Congress did not intend to condition a claimant's right to sue under Title VII on fortuitous circumstances or events beyond his control which are not spelled out in the statute." [69] Put another way, we cannot believe that Congress willed the subversion of Section 717(c) by an incompatible invocation of imputed notice. We hold that the 30-day period for filing suit did not begin to run until appellant actually received the Board's decision;[70] and it follows that his suit, brought 28 days later, was timely.

The judgment appealed from is accordingly reversed, and the case is remanded to the District Court for further proceedings consistent with this opinion.

*Reversed and remanded.*

ROBB, Circuit Judge, dissenting:

I dissent. In my opinion the notice sent to Mr. Cass at his office and received on August 30, 1974 was binding upon the ap-

---

party because it was received by his nine-year-old nephew and lost. The court rejected the theory of constructive receipt for reasons unrelated to the nephew's immaturity. While the court stated that the applicable limitation period began to run only when statutory notice "actually reached him or his attorney," *id.,* we do not read this observation as an indication of a view on a situation such as that presently before us. The court cited in support of the statement *Genovese v. Shell Oil Co.,* 5 Cir., 488 F.2d 84 (1973), wherein the complaining employee "assert[ed] that upon receipt of the EEOC notice he contacted his attorney and authorized the filing of suit, and that the attorney apparently misread the notice and thus mistakenly failed to comply with the 30-day requirement." *Id.* at 85. We discern no significant similarity between *Genovese* and the case at bar.

**66.** See note 49 *supra* and accompanying text. We so conclude, not simply because the Commission has promulgated a regulation in that regard, but as a consequence of independent interpretation of § 717(c), aided in part by the

administrative construction which the regulation reflects. Compare *Coles v. Penny, supra* note 26, 174 U.S.App.D.C. at 284–285, 531 F.2d at 916–917.

**67.** See note 49 *supra* and accompanying text.

**68.** *Copeland v. Brennan,* 414 F.Supp. 644 (D.D. C.1975). There the employing agency sent notice of its disposition to the complaining employee but not to her counsel. It was held that the notice was ineffective to trigger the 30-day period until the attorney received it through the employee. See also *Coles v. Penny, supra* note 26, 174 U.S.App.D.C. at 284 n.18, 531 F.2d at 616 n.18, and accompanying text.

**69.** *Franks v. Bowman Transp. Co., supra* note 27, 495 F.2d at 404.

**70.** So concluding, we need not consider the alternative suggestion that, even if imputed notice is permitted, in this case there was no receipt by a then-authorized representative. See note 61 *supra* and accompanying text.

pellant. The suit in District Court was therefore filed out of time. A brief recital of the facts will make clear the basis of my view.

The appellant's original complaint of discrimination, filed with the Defense Supply Agency November 14, 1972, included this statement:

I have retained counsel to represent me in this case. He is Peter D. Bewley of the firm of Wilmer, Cutler & Pickering 900–17th Street, N.W., Washington, D.C. 20006. Of counsel will be Roderick Boggs . . . . My counsel expect to exercise all rights granted to them by the code of federal regulations . . . including but not limited to the right to receive notice of any and all actions taken with regard to this complaint . . . .

(App. p. 8)

On October 2, 1973 Richard W. Cass of the Wilmer, Cutler & Pickering firm wrote to the Appeals Examining Office of the Civil Service Commission: "Peter D. Bewley and myself will be representing Bernard Bell" at his hearing. Mr. Cass wrote on the stationery of Wilmer, Cutler & Pickering. His name and that of Mr. Bewley appeared on the letterhead, the position of Mr. Bewley's name indicating that he was senior to Mr. Cass.

On August 30, 1974 a copy of the Civil Service Commission's final decision was delivered to the office of Mr. Cass by registered mail.

As the Supreme Court has said, *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962), under "our system of representative litigation . . each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955." I think that as of August 30, 1974 the appellant was charged with notice of the decision delivered to the office of his attorneys on that date.

I am not persuaded by the appellant's attempt to avoid the binding effect of the notice of August 30, 1974. He says that on or about August 15, 1974 Mr. Cass informed him that he was leaving the country for an extended period and "after approximately August 15, 1974, I no longer considered Richard Cass my attorney for this matter and began to seek new counsel." (App. 29) Mr. Bewley in turn states in an affidavit that "at some time during the latter part of July, 1974 Richard Cass indicated to me that he could not continue to represent Bernard Bell." (App. 30) Nowhere however is there any indication that Mr. Bewley, co-counsel with Mr. Cass, terminated his representation of appellant or even suggested to the appellant that it was about to be terminated. Nor is there any indication that the Civil Service Commission was notified that either Mr. Bewley or Mr. Cass was withdrawing. In these circumstances they were still attorneys of record for the appellant and the Commission was entitled to treat them as such when sending notices to the appellant.

The Civil Service Commission's regulations cited by the majority do not require personal notice to the employee as distinguished from notice to his lawyer, nor do they suggest to me that the Commission intended to make any such requirement. The regulations are consistent with the belief that the Commission regarded notice to the lawyer as notice to his client. If the Commission intended to require personal notice to the client I think it would have said so by plain language, not by innuendo.

The theory of the majority makes the giving of notice to counsel a meaningless exercise. This I think is "wholly inconsistent with our system of representative litigation". *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962).