**Shirley W. IRWIN, Plaintiff–Appellant,**

**v.**

**VETERANS ADMINISTRATION, et al.,
Defendants–Appellees.**

No. 88–1736.

United States Court of Appeals,
Fifth Circuit.

June 13, 1989.

Jon R. Ker, Hewitt, Tex., for plaintiff-appellant.

Katherine L. Smith, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., Austin, Tex., for defendants-appellees.

Before ALDISERT,* REAVLEY, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The Veterans Administration Medical Center in Waco, Texas on April 17, 1986 fired Irwin, an employee. He contacted an Equal Employment Opportunity Counselor

* Circuit Judge of the Third Circuit, sitting by designation.

on June 12, 1986, and later filed a complaint with the Veterans Administration. The VA rejected Irwin's claim on the ground that he failed to contact an EEO Counselor within thirty days of the alleged discrimination.[1] Irwin appealed to the Equal Employment Opportunity Commission, which affirmed the VA's decision.

Notice of the EEOC decision was delivered to the office of Irwin's attorney, and an employee of the attorney signed a receipt for the letter on March 23, 1987. At the time, the attorney was in Korea with his United States Army Reserve unit. Irwin claims that he received notice of the EEOC decision on April 7, and the attorney asserts that he first actually learned of the decision on April 10. Irwin filed this suit on May 6. The district court dismissed Irwin's complaint, and this appeal ensued.

## I

We are asked to identify the triggering event which starts the thirty-day time clock for filing a Title VII employment discrimination complaint against the federal government. The statute is of little assistance, providing only that a civil action may be filed "[w]ithin thirty days of receipt of notice of final action taken" by the employing agency or by the EEOC on the employee or applicant's administrative complaint.[2] But the statute does not define "receipt." The EEOC regulations are no more specific.[3] Though requiring the EEOC or employing agency to "notify an employee or applicant of his right to file a civil action, and of the 30-day time limit for filing," [4] the regulations take no position on the crucial question of whether receipt of a right-to-sue letter by an employee's attorney is notice to the employee of the administrative decision. The government suggests that the triggering event for the thirty-day

time period is receipt of the EEOC right-to-sue letter by the claimant or by the office of the claimant's attorney, whichever occurs first. The district court agreed, finding it lacked jurisdiction over Irwin's Title VII claim because the complaint was filed more than thirty days after the right-to-sue letter arrived at Irwin's attorney's office. Irwin argues that the thirty-day period should not begin running until the claimant receives actual notice of his right to sue, or at least until the attorney has actual notice.

Our analysis begins with *Ringgold v. National Maintenance Corp.*[5] *Ringgold* involved a Title VII action against a private employer, with a ninety-day period for filing suit.[6] In that case, the attorney who filed Ringgold's administrative complaint subsequently left her two-attorney partnership. The EEOC right-to-sue letter arrived at the firm's office on October 6, and was signed for by a relative of the remaining partner. Because the remaining partner was out of town, neither attorney learned about the EEOC decision until October 10. The complaint was filed on January 6, ninety-two days after arrival of the right-to-sue letter. We held that the suit was not timely filed, concluding that "the 90-day period of limitation established by 42 U.S.C. § 2000e-5(f)(1) begins to run on the date that the EEOC right-to-sue letter is delivered to the offices of formally designated counsel or to the claimant." [7]

Irwin argues that we should not apply the constructive notice rule of *Ringgold* to his Title VII action against the federal government. He notes the longer period in which to file suit against a private employer. Further, while the ninety-day period of § 2000e-5(f)(1) is subject to equitable tolling,[8] the thirty-day span allotted under § 2000e-16(c) operates as an absolute jurisdictional limit.[9] In Irwin's view, construc-

---

**1.** *See* 29 C.F.R. § 1613.214(a)(1)(i).

**2.** 42 U.S.C. § 2000e-16(c).

**3.** *See* 29 C.F.R. § 1613.281-.282.

**4.** 29 C.F.R. § 1613.282.

**5.** 796 F.2d 769 (5th Cir.1986).

**6.** 42 U.S.C. § 2000e-5(f)(1).

**7.** *Ringgold,* 796 F.2d at 770.

**8.** *Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 592-93 n. 15 (5th Cir.1981).

**9.** *Bell v. Veterans Administration Hosp.,* 826 F.2d 357, 360-61 (5th Cir.1987).

tive notice would add an unnecessary burden to a federal employee's Title VII rights.

■ Our task, of course, is to discern Congressional intent. Having found the constructive notice doctrine applicable under § 2000e–5(f)(1) in *Ringgold*, we see no reason to believe Congress intended a different result in suits against the government than in suits against private employers. We have adopted a "system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' " [10] This basic policy choice is reflected in Fed.R.Civ.P. 5(b), making service of papers on a party's attorney the normal procedure. Congress enacted § 2000e–16(c) against this background. We are persuaded that the sufficiency of notice to a person's lawyer is so ingrained that we should expect Congress to say so if it intends a different rule. Nor is the thirty-day time limit under this statute more burdensome than many other time limits within which attorneys must operate.

Irwin also relies on our decision in *Cooper v. Lewis*, [11] where we determined that notice to an attorney would not be imputed to the employee for purposes of a fifteen-day time period governing appeals from an employing agency to the Civil Service Commission Appeals Review Board. The fifteen-day limit was not statutory, but rather was created by the agency pursuant to its rulemaking authority. We interpreted the regulation to require actual notice to the claimant as the triggering event. In doing so, we were persuaded that the regulation comfortably abided our charge to liberally construe the provisions of Title VII.

In *Cooper*, we relied on three cases from other circuits interpreting § 2000e–16(c),

the statute now before us. In *Bell v. Brown*, [12] a divided panel of the D.C. Circuit read "receipt" in § 2000e–16(c) to mean receipt by the employee, relying on the principle of liberal construction of remedial statutes. It also rested its decision on judicial deference to administrative construction of the statute, arguing that the "Civil Service Commission's interpretations of that section have consistently reflected the theme that the 30–day period for suit is not set in motion until notice of the final administrative action is obtained by the affected employee, irrespective of when it might reach a representative." [13] The dissent emphasized that parties are generally deemed to have notice of facts known to their attorneys. [14]

In *Craig v. Department of Health, Education & Welfare*, [15] the Eighth Circuit followed *Bell*, giving the same two reasons for its decision. However, it carved out an exception where a certified letter is sent to a representative designated by the employee, addressed in accordance with the employee's specific directions, and the representative personally acknowledges receipt of the notice. In *Rea v. Middendorf*, [16] the Sixth Circuit relied on *Bell* to affirm dismissal of a Title VII complaint, reasoning that the thirty-day period began running when the employee received notice of the adverse administrative decision, and not from the later date when his attorney received notice.

In *Cooper*, we expressed approval for the holdings of *Bell, Craig* and *Rea* in dicta:

[S]ince the Commission did not intend the fifteen-day time period established by Commission regulations to commence upon receipt of notice by the complainant's representative, and since that interpretation comports with the policy that the Act should be liberally construed in

---

10. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (quoting *Smith v. Ayer*, 101 U.S. (11 Otto.) 320, 326, 25 L.Ed. 955 (1879)).

11. 644 F.2d 1077 (5th Cir. Unit A May 1981).

12. 557 F.2d 849 (D.C.Cir.1977).

13. *Id.* at 854.

14. *Id.* at 857–58 (Robb, J., dissenting).

15. 581 F.2d 189 (8th Cir.1978).

16. 587 F.2d 4 (6th Cir.1978).

favor of those that it is designed to protect, we are compelled to hold that the constructive notice doctrine is inapplicable here. While the Sixth, Eighth, and D.C. Circuit cases dealt with the statutory thirty-day time period, *we find their reasoning applicable here and agree with their result.* Indeed, we find that result even more compelling here where the court is dealing with a Commission regulation that establishes an extremely short period within which an employee may appeal to the Review Board and that anticipates that notice to the employee—not his representative—will trigger the running of the limitation period. Therefore, we hold that in the present case, the fifteen-day time period established by Commission regulations for federal employees to appeal to the Civil Service Commission Appeals Review Board began to run when the employee received the notice.[17]

Irwin invites us to take the next step of turning *Cooper*'s dicta into holding. We decline the invitation. Forced to choose between *Ringgold* and *Cooper,* we find *Ringgold* more analogous to our present inquiry. *Cooper,* after all, involved construction of a regulation adopted by the relevant administrative agency. Thus, *Cooper*'s primary focus was upon the intent of the Civil Service Commission. Our task, as in *Ringgold,* is to determine Congressional intent without the assistance of a regulator's interpretive effort.

Further, when *Bell, Craig* and *Rea* were decided, regulatory authority under this statute rested with the Civil Service Commission. Those cases relied on CSC regulations, which specifically stated that the employee could file a civil action "[w]ithin thirty (30) calendar days of *his* receipt of notice of final action" taken by his agency or by the Commission on his complaint.[18] Since then, regulatory authority has been shifted to the Equal Employment Opportunity Commission.[19] While the EEOC adopted many of the CSC's regulations verbatim, this particular regulation was soon modified by dropping the word "his" from in front of "receipt."[20] Thus, the current regulation does not specify whose receipt of notice triggers the thirty-day time clock for filing a civil action.[21] Without an authoritative administrative interpretation of the statute, much of the rationale for *Bell, Craig* and *Rea* disappears. *Cooper* also becomes less persuasive, since it involved interpretation of a CSC regulation, rather than its EEOC counterpart, and since it rested on *Bell, Craig* and *Rea* in reaching its result. Thus, we apply the constructive notice doctrine of *Ringgold,* and find that the district court lacked jurisdiction over Irwin's Title VII claim.

## II

■ Irwin next asserts that the district court erred when it dismissed his claims under 42 U.S.C. §§ 1985 and 1986. The district court based its decision on *Brown v. General Services Administration,*[22] which held that Title VII provides the exclusive remedy for claims of employment discrimination filed against the federal government. Irwin admits the principle, but insists that he pled claims under §§ 1985 and 1986 which were sufficiently distinct from employment discrimination claims to avoid the bar of *Brown.* We need not decide the scope of *Brown.* To rely on § 1985, a plaintiff must plead the operative facts upon which his claim is based, more than conclusory allegations.[23] If Irwin intended to plead claims sufficiently distinct from the employment context to escape *Brown,* he has not done so with the

---

17. *Cooper,* 644 F.2d at 1085 (emphasis supplied).

18. *See* 37 Fed.Reg. 25,699 (1972) (text of 5 C.F.R. § 713.281(a), (c) (emphasis supplied)); *Rea,* 587 F.2d at 5 (quoting 5 C.F.R. § 713.281(a)).

19. *See* 43 Fed.Reg. 60,901 (1978).

20. *See* 45 Fed.Reg. 24,133 (1980) (text of 29 C.F.R. § 1613.281(a), (c)).

21. 29 C.F.R. § 1613.281.

22. 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976).

23. *Holdiness v. Stroud,* 808 F.2d 417, 424 (5th Cir.1987).

required degree of specificity. Since a § 1985 conspiracy forms an integral part of a claim under § 1986,[24] Irwin's reliance on the latter statute is also undermined.

### III

■ Irwin argues finally that the district court erred in dismissing his age discrimination complaint. We have previously outlined the two "avenues of relief" available to a plaintiff alleging age discrimination in federal employment:

> He may file an administrative complaint with the employing federal agency, and if the employing agency's determination is adverse to him he may appeal to the Civil Service Commission [now the Equal Employment Opportunity Commission] for administrative review. After the administrative complaint has been filed with the Commission, a civil action then may be instituted. Alternatively, the employee has the option under the Act to bypass the administrative process either in part or in its entirety and proceed directly to federal court thirty days after notice of intent to sue has been given to the Commission as long as such notice is given "within one hundred and eighty days after the alleged unlawful practice occurred."[25]

The plaintiff must either "seek relief through one of the two avenues described or alternatively claim equitable grounds for not having so proceeded and must prove that the reasons he was prevented from proceeding can be blamed upon the employing agency."[26]

When a defendant makes a "factual attack" on the court's jurisdiction, the plaintiff must "prove the existence of subject-matter jurisdiction by a preponderance of the evidence."[27] An attack is "factual" rather than "facial" if the defendant "submits affidavits, testimony, or other evidentiary materials."[28] The plaintiff is obliged

"to submit facts through some evidentiary method" to sustain his burden of proof.[29]

In this case, the government challenged the district court's subject matter jurisdiction over the age discrimination claim in its Amended Motion to Dismiss. The primary thrust of its argument was that exhaustion of remedies is a jurisdictional prerequisite, and that it should have been alleged in Irwin's district court complaint. Appellees also argued, however, that "the evidence . . . submitted to the Court suggests that plaintiff never raised this issue with the EEOC." The government attached Irwin's EEO Counseling Report, which did not mention claims based on age discrimination. The district court ordered the parties to submit evidence on the question of jurisdiction over the Title VII claim, but made no similar request with respect to the other jurisdictional attacks. In reply to the motion to dismiss the age discrimination claim, Irwin argued:

> Defendants next assert that Plaintiff failed to include age discrimination as an element in his administrative proceedings. Plaintiff, in seeking redress through the administrative routes, asserted all claims including those of age discrimination. That the Equal Employment Opportunity Commission in its decision did not directly address Plaintiff's age discrimination claim, is not binding, or should not be found to be binding upon the Plaintiff at this time. Plaintiff asserted through the EEO counsel all matters alleged in Plaintiff's complaint herein, including his age discrimination assertion.

Irwin offered no evidence to back up this claim. The district court treated the attack on its jurisdiction as factual, finding that appellant had neither filed a formal age discrimination complaint with his agency nor given notice of his intent to sue. The

---

**24.** *See Hamilton v. Chaffin,* 506 F.2d 904, 913–14 (5th Cir.1975).

**25.** *Paterson v. Weinberger,* 644 F.2d 521, 523–24 (5th Cir.1981) (citations omitted).

**26.** *Id.* at 524.

**27.** *Middle South Energy, Inc. v. City of New Orleans,* 800 F.2d 488, 490 (5th Cir.1986).

**28.** *Paterson,* 644 F.2d at 523.

**29.** *Id.*

court also stated that Irwin offered no reason justifying his failure to give such notice. We affirm.

AFFIRMED.