589 F.2d 631
 18 Fair Empl.Prac.Cas. 789, 18 Empl. Prac.
Dec. P 8694,
191 U.S.App.D.C. 108
 James A. BETHEL, Jr., Appellant,
v.
Burtell M. JEFFERSON, Chief of Police, Metropolitan Police
Department.
Ernest E. HEMBY, Appellant,
v.
Burtell M. JEFFERSON, Chief of Police, Metropolitan Police Department.
 Nos. 76-1941, 76-1960.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 21, 1977.
Decided Nov. 9, 1978.
 
 John G. Gill, Jr., Rockville, Md., with whom Chris Marder, Rockville, Md., was on the brief for appellants.
 S. Perry Jones, Asst. Corp. Counsel, Washington, D. C., at the time the briefs were filed, for appellee. John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the briefs were filed, Louis P. Robbins, Principal Deputy Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel, Ted P. Gerarden, Asst. Corp. Counsel, Washington, D. C., at the time the briefs were filed, and George T. Masson, Jr., Asst. Corp. Counsel, Washington, D. C., were on the brief for appellee.
 Philip B. Sklover, Washington, D. C., filed a brief on behalf of the Equal Employment Opportunity Commission, as amicus curiae, urging reversal in No. 76-1941 and affirmance in No. 76-1960. Charles L. Reischel, Washington, D. C., also entered an appearance for the Equal Employment Opportunity Commission, as amicus curiae.
 Marleigh Dover Lang, Washington, D. C., was on brief for Equal Employment Opportunity Commission, amicus curiae.
 Barbara Allen Babcock, Asst. Atty. Gen., and William Kanter, Atty., Dept. of Justice, Washington, D. C., filed a brief on behalf of the Civil Service Commission, as amicus curiae, urging affirmance.
 Before McGOWAN, TAMM and ROBINSON, Circuit Judges.
 Opinion for the court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge:
 
 
 1
 These appeals present us primarily with the task of determining which section of Title VII of the Civil Rights Act of 1964,[1] as amended by the Equal Employment Opportunity Act of 1972,[2] officers of the District of Columbia Metropolitan Police Department must utilize when administratively or judicially pressing claims of employment discrimination. In each of these cases the District Court held[3] that the proper route is Section 706, which requires, as a precondition to judicial review, enlistment of the efforts of the Equal Employment Opportunity Commission.[4] Because appellants had not complained to the Commission and consequently had not received a "right-to-sue letter"[5] from it, their employment discrimination suits were dismissed.[6] As an alternative ground, the court held that Title VII jurisdiction was lacking in any event since, in its view, the alleged acts of discrimination occurred prior to March 24, 1972, the date upon which Title VII became applicable to governmental employees.[7] The court felt that the 1972 Act had no retroactive force because appellants had no formal complaints of discrimination pending, administratively or otherwise, on that date.[8]
 
 
 2
 We, too, find that Section 706 sets forth the Title VII remedy enjoyed by District policemen,[9] but we disagree with the conclusion that appellants' failure to first pursue their causes with the Commission precludes this litigation.[10] We also perceive error in the determination that no post-1972 discrimination is present in these cases.[11] We accordingly reverse the judgments appealed from and remand the cases to the District Court for further proceedings.[12]
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 The two appellants are uniformed officers of the Metropolitan Police Department. Each alleges racial discrimination in disciplinary and other actions taken by the Department against them. Beyond that, their cases differ in material respects.
 
 A. Bethel's Case
 
 4
 Appellant Bethel faced a police trial board on charges stemming from an incident occurring in July, 1971. In October of that year, the board recommended that he be removed from the force. The disposition would have become final had Bethel not appealed[13] to the Mayor of the District of Columbia[14], which he did, arguing that the board's action was not sufficiently supported by evidence in the record. While the board's recommendation was under review by the Mayor, Bethel remained suspended but still a member of the force.
 
 
 5
 On August 22, 1974, the Mayor accepted the board's factual findings but changed the outcome to suspension without pay for 35 months, approximately the period of time it had taken to resolve the appeal. Bethel first learned of the Mayor's decision on September 19. On October 1, he complained to the District's Office of Human Rights, the agency designated to entertain complaints of discrimination emanating from employment with the District of Columbia Government,[15] and to the Civil Service Commission. Since, however, Bethel did not occupy a federal civil service position, the Commission held that the matter was not within its jurisdiction. The Office of Human Rights also disclaimed jurisdiction, but on the ground that Bethel had not complained to it within 15 days of the July, 1971, incident. Bethel filed suit in the District Court within 30 days of those decisions.
 
 B. Hemby's Case
 
 6
 Appellant Hemby's grievances are that on several occasions he was harassed by Department personnel because of his race and religion[16] and in retaliation for complaints charging discrimination prohibited by Title VII.[17] In all, Hemby faced three police trial boards, and each time he lost. In one such instance a disciplinary action the decision of the board was appealed to the Mayor who, on April 13, 1973, rejected the board's recommendation of suspension and ordered a forfeiture of six months' backpay. On May 24, within 30 days of receipt of notice of the Mayor's disposition, Hemby initiated his lawsuit.
 
 
 7
 Thereafter, on December 14, 1973, Hemby appeared before another trial board. Again it was recommended that he be separated from the force, and again he appealed on the merits to the Mayor. For a procedural defect irrelevant to this litigation, the Civil Service Commission ordered that Hemby be restored to the payroll pending decision of the administrative appeal, which apparently still remains unresolved. Hemby has supplemented that appeal with a brief arguing that the trial board acted in retaliation for the filing of his civil rights suit against the Department. On July 1, 1974, Hemby amended his complaint in the District Court to allege that that trial board proceeding was attributable to racial and religious discrimination and his past Title VII charges.
 
 
 8
 II. THE CONTINUING NATURE OF THE DISCRIMINATION ALLEGED
 
 
 9
 At the outset, we must examine the contention that the assertedly discriminatory acts against appellants took place prior to the effective date of the 1972 amendments to Title VII, and the further contention that since no administrative or judicial complaints were pending at that time,[18] their claims are not cognizable thereunder. These arguments, we think, may easily be dismissed.
 
 
 10
 Appellants challenge as discriminatory not only the incidents antedating the convening of the trial boards but also the trial board proceedings themselves and the punitive measures ensuing therefrom, which allegedly were precipitated by the earlier incidents. Each claim in suit encompasses not an assortment of unrelated happenings, but a chain of connected events continuing over a considerable time span a chain in which pre-1972 episodes were foremost and seminal links. In no instance could this type of discrimination become consummated until the particular adverse personnel action attained finality.[19]
 
 
 11
 For Bethel, that occurred in 1974 as a result of the Mayor's decision to suspend him without pay for 35 months; until then, under District of Columbia law, the trial board's decision was simply a "recommendation."[20] And the Mayor has yet to reach a final decision on the recommendation of Hemby's last trial board. On the other hand, the personnel actions taken by Hemby's first two trial boards apparently did achieve finality before Title VII was expanded to cover employees such as Hemby, but this should not conclude judicial inquiry. There remains the question whether the entire series of events pre-1972 as well as post-1972 comprised a concerted and continuing course of discrimination against Hemby enduring well past 1972.[21] We intimate no view in this regard, and leave this aspect of Hemby's case for possible exploration in the District Court on remand.[22]
 
 III. THE STATUTORY ROUTE TO REDRESS
 
 12
 We turn now to ascertain the statutory path that officers of the Metropolitan Police Department must follow in bringing and maintaining charges of employment discrimination. As has been aptly noted, Title VII " 'leaves much to be desired in clarity and precision,' "[23] and the instant cases exemplify that shortcoming. The two appellants chose to proceed under Section 717,[24] which deals with federal employment, and which contemplates exhaustion of remedies afforded by the employing agency and, at the employee's election, subsequent utilization of the processes of the Civil Service Commission.[25] Admitting that appellants are covered by Title VII, appellee argues that their proper recourse lies in Section 706,[26] which pertains to employees in the private sector and in state and local governmental services. The difference in viewpoint is important because a prerequisite to suit under Section 706 is obtainment of a "right-to-sue" letter from the Equal Employment Opportunity Commission[27] something neither appellant acquired because neither ever complained to that agency.
 
 A. The Legislative History
 
 13
 Congress passed the Equal Employment Opportunity Act of 1972[28] to extend the protections of Title VII to most federal, state and local government employees.[29] The problem we now face silently dogged this legislation throughout its history.
 
 
 14
 In the House, the Hawkins Bill[30] would have imposed the discrimination ban on federal employment and assigned the task of administrative enforcement to the Equal Employment Opportunity Commission. The bill would have brought within the section pertaining to the Federal Government those "positions with the District of Columbia government covered by the Civil Service Retirement Act . . .,"[31] but the fate of other District of Columbia positions was not made so clear. While Section 701, the definitional provision governing Section 706 relief, was to be amended to extend Title VII protection to state and local government employees,[32] the amendment flatly excepted employees of "the District of Columbia."[33] Yet not all such employees were to be encompassed by Section 717 since not all occupied positions "covered by the Civil Service Retirement Act. . . ."
 
 
 15
 When the Hawkins Bill was reported out of committee, its language remained unchanged but the section-by-section analysis of Section 701 described the exception as limited to employees of "District of Columbia departments or agencies (except those subject by statute to procedures of the Federal competitive service as defined in 5 U.S.C. 2102)."[34] This statement manifests an intent that District of Columbia employees be covered by one section or the other of Title VII[35] a point that appellee does not deny.[36]
 
 
 16
 The bill introduced in the other chamber by Senator Williams attempted explicitly to include all District of Columbia employees within one section or the other by providing in Section 701 for exclusion from the term "employer" in Section 706 of "any department or agency of the District of Columbia" only if it is "subject by statute to procedures of the competitive service (as defined in Section 2102 of Title 5 of the United States Code). . . ."[37] This language is essentially the wording now on the statute books.[38] The Williams Bill also called for enforcement by the Equal Employment Opportunity Commission of federal-discrimination complaints and included in Section 717 "those portions of the District of Columbia . . . having positions in the competitive service. . . ."[39] Quite significantly, Representative Hawkins characterized the Williams Bill as having "the same coverages" as his own.[40]
 
 
 17
 The language of Section 717 of the Williams Bill was modified slightly in committee to embrace "those units of the Government of the District of Columbia having positions in the competitive service. . . ."[41] At the same time, however, the bill was amended to place enforcement responsibility in the hands of the Civil Service Commission.[42] The committee noted that body's past shortcomings but hoped that it would "reconsider its entire complaint structure"[43] and believed that it sincerely desired to eradicate federal employment discrimination.[44] No other explanation for switching enforcement from the Equal Employment Opportunity Commission was expressed. With these exceptions, the relevant provisions of the Williams Bill became law without further change and without additional relevant discussion. The remainder of the congressional history of the 1972 Act consists almost totally of consideration of a proposal to give the Equal Employment Opportunity Commission cease-and-desist enforcement powers in cases within its purview.[45]
 
 B. Construction of the Act
 
 18
 Because the legislative history supplies no clear answer to our problem, appellants propose to bridge the gap by a syllogism. They start with the premise that the plain wording of Section 701 excludes from the ambit of Section 706 and thus from the Equal Employment Opportunity Commission's jurisdiction District of Columbia agencies "subject by statute to procedures of the competitive service . . . ."[46] They then point out that the Metropolitan Police Department is subject to some Civil Service Commission procedures namely, those governing appointment and promotion.[47] Thus they reason that the Department is omitted from Section 706 and, because no one argues that it is locked out of Title VII's provisions altogether, that the Title VII rights of District police must be controlled by Section 717.
 
 
 19
 Appellants' chain of reasoning suffers from a critically weak link. The language referred to can as easily be read to except from Section 706 only agencies subject to All civil service procedures as to exclude those subject to Any such procedures. Indeed, the parenthetical qualifier to the definitional phrase relied upon indicates that Section 706, by way of Section 701, leaves out only those units subject to the full panoply of competitive service requirements. The qualifier refers to 5 U.S.C. § 2102, which defines the competitive service, and the Metropolitan Police Department simply does not come within that definition.[48]
 
 
 20
 Even were we to accept appellants' method of reasoning, they present us with no ground for launching the process with Section 701. It would seem just as logical to begin by ascertaining which agencies are included within Section 717, and then by the same principle of logic the law of the excluded middle[49] place everyone else in Section 706. The explanation for appellants' start at Section 701 is quite obvious: the unequivocal language of Section 717 includes only "those units . . . in the competitive service . . . ,"[50] and as noted the Metropolitan Police Department is not such a unit.[51] Consequently, we are constrained to reject appellants' construction.
 
 
 21
 The Civil Service Commission, as Amicus curiae, suggests a modified version of appellants' interpretation. The Commission views its selection by Congress instead of the Equal Employment Opportunity Commission as the agency to enforce the ban against federal employment discrimination as a decision to continue its jurisdiction over areas in which it had previously adjudicated discrimination complaints under various executive orders.[52] Accordingly, the Commission perceives a congressional design to give it jurisdiction, pursuant to Section 717, of discrimination complaints against a governmental body subject to some but not all civil service procedures only when those charges concern personnel actions otherwise governed by its procedures. It urges that such a construction is needed to avoid intrusion in areas that it supervises, such as competitive examinations for appointment and promotion of police officers,[53] through discrimination investigations by the Equal Employment Opportunity Commission.
 
 
 22
 We must reject this analysis as well. Title VII leaves no room for a construction that would route some employees of a single agency in one direction and others in quite another, or would conduct a single individual with multiple grievances down two completely divergent procedural paths. We will not strain to reach a construction of this remedial legislation, which often is invoked by lay employees without benefit of a lawyer,[54] likely to "ensnare charging parties in a web of procedural traps."[55] Title VII states flatly that some "units" of the District of Columbia Government are governed by Section 717[56] and that other "department(s) or agenc(ies)" thereof are subject to Section 706,[57] and indubitably there is some uncertainty as to which entities fall on which side of the split. But there can be no doubt whatever that Congress drew the dividing line on the nature of the entity, not on the character of the grievance. We will not distort a relatively unclouded statutory command to facilitate interpretation of an obscure provision.
 
 
 23
 We note, too, that the Civil Service Commission's fear of dual authority over particular employment practices apparently was not of great concern to Congress. The legislative history evinces a recognition indeed a welcoming of an overlapping mandate.[58] And we do not foresee bureaucratic conflict of such a potentially crippling nature that we should depart from unmistakeable congressional intent in an effort to avoid it.
 
 
 24
 We conclude, then, that Congress consigned discrimination complaints against "Units of the Government of the District of Columbia having positions in the competitive service"[59] to the procedures erected by Section 717 and left complaints against all other agencies of the District of Columbia within the ambit of Section 706. Since officers of the Metropolitan Police Department do not occupy positions in the competitive service, their avenue to the courts is Section 706, which calls for a charge filed first with the Equal Employment Opportunity Commission.
 
 IV. EFFECT OF TAKING THE WRONG ROUTE
 
 25
 Unfortunately, appellants did not complain to the Equal Employment Opportunity Commission. Appearing as Amicus curiae, however, that agency itself proposes that the omission be excused in these cases because the functioning of Title VII depends in such large part upon the personal initiative and effort of lay charging parties,[60] and because, as we have just seen, the statutory procedural path for District policemen is greatly confusing even for lawyers[61] and judges.[62]
 
 
 26
 We agree. In enacting the 1972 amendments, Congress expressed its displeasure with strict adherence to exhaustion requirements when the employee is forced to act with "no certainty of the steps required to exhaust such remedies."[63] And while this litigation is the first we have uncovered in which a court has construed the statutory provisions under scrutiny in any analogous situation, we have striven to abide this congressional concern in other contexts. We have held that Section 706's requirement that a complainant approach a designated agency within a set period of time after the employer has discriminated is not jurisdictional in the strict sense.[64] We have also declared that although we will require close observance of similar time limits under Title VII,[65] "equitable principles can be used to extend the time period in deserving cases."[66] The reasoning underlying these pronouncements was that, because Title VII is remedial legislation dependent for its enforcement on laymen,[67] we must seek in every case "an interpretation animated by the broad humanitarian and remedial purposes underlying the federal proscription of employment discrimination,"[68] and resultantly that resort to technicalities to foreclose recourse to administrative or judicial processes is "particularly inappropriate."[69]
 
 
 27
 Appellee argues, however, that "since the 1972 amendments clearly indicate that Some District Government employees are covered by § 706 and Others by § 717, it was incumbent upon appellants to make the necessary inquiries, or do the required research, or take other steps to preserve their federal rights. . . ."[70] But surely it would be hypertechnical, if not downright unrealistic, to require nonlawyers to study the statute, its legislative history and its administrative interpretations and predict accurately which of two quite reasonable constructions of the unclear language a court will adopt. And, just as surely, appellee's suggestion would inflict the harsh penalty of suit-dismissal for an easily understandable interpretive error and frustrate congressional intent as well. The Senate author of the 1972 amendments admonished that because "aggrieved individuals . . . frequently are untrained laymen . . . acts of discrimination should not escape the effect of the law through a procedural oversight."[71] Moreover, we ourselves have noted that "courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity, resolved them in favor of the complaining party."[72]
 
 
 28
 We do likewise in these cases. In our view, if appellants adequately complied with the requirements of Section 717, the time limit for complaining to the Equal Employment Opportunity Commission under Section 706 was tolled until the date of this opinion when the route they should have taken was first made clear.[73] Our final task, therefore, is to gauge appellants' administrative performance by the standards of Section 717.
 
 V. THE SECTION 717 PERFORMANCES
 
 29
 We face an initial and relatively untreated difficulty in determining just what standards to apply in judging the performance of Section 717 complainants in the administrative process. Is the complainant as is usually the lot of litigants aggrieved by agency action inexorably to suffer for a procedural default regardless of type or magnitude? Or because Congress was wary enough of the administrative process in this area to have provided a trial de novo for Section 717 complainants,[74] and because it specifically criticized prior law under which judicial review was often denied for failure to exhaust administrative remedies[75] is compliance with the express, as distinguished from administratively extrapolated, demands of Section 717 alone enough?
 
 
 30
 On its face, Section 717 summons no more than that a litigant first complain to his employing agency[76] and file his suit, if any, within 30 days of receipt of notice of the final agency action.[77] The Supreme Court has indicated that this is Section 717's total demand that the only preconditions imposed by Section 717 are that "the complainant must seek relief in the agency that has allegedly discriminated against him"[78] and then or optionally after utilizing the processes of the Civil Service Commission he must bring his court action within 30 days.[79] Section 717 says nothing about procedures or time limits within the administrative phase.[80]
 
 
 31
 Congress granted the Civil Service Commission authority to promulgate regulations effectuating Title VII.[81] But, once again we repeat, Congress expected that the administrative stage of the Title VII process would be conducted by laymen not lawyers[82] and was quite unhappy with pre-1972 administrative handling of discrimination complaints.[83] By the same token, Congress could not possibly have intended that federal agencies could permissibly extinguish rights of the many federal employees utilizing Section 717 simply by creating procedural labyrinths.[84] On the other hand, it must be remembered that Section 717 "establish(es) complementary administrative and judicial enforcement mechanisms designed to eradicate federal employment discrimination,"[85] and that this "careful blend"[86] would become unbalanced were we to sanction cavalier disregard of the rules of the administrative tribunal. Thus the touchstone must be whether the agency reasonably created and applied the particular procedural restriction governing resort to its antidiscrimination mechanisms;[87] and the basic demand on the complainant is that the agency be given sufficient, even if technically flawed, notice of the grievance.
 
 A. Bethel's Complaint
 
 32
 Applying this standard, we find Bethel's case relatively easy. Within 30 days of receipt of the Mayor's decision, Bethel complained to both the Civil Service Commission and the District of Columbia Office of Human Rights. As we pointed out earlier, the Mayor's decision was the final step in what for Title VII purposes allegedly was a single, continuous course of discrimination that began with an incident transpiring in July, 1971.[88] Bethel sought relief from the Office of Human Rights within 15 days of receipt of the Mayor's decision, but that agency rejected his complaint because he had not first sought its aid in 1971.
 
 
 33
 That, we say, was not a reasonably imposed restriction on access to agency redress of discrimination. No published regulation of the Office of Human Rights[89] or of the Metropolitan Police Department[90] defined "discriminatory acts" in such fashion as to put Bethel on notice that he had to complain in 1971 instead of waiting to see whether and to what extent his employment status would be adversely affected.[91] Indeed, instead of removing Bethel from the force as the trial board had recommended in 1971, the Mayor in 1974 ordered a period of suspension without pay. It is quite understandable that a governmental employee would deem it wiser to refrain from rocking the boat with a complaint of racial discrimination unless and until he is confronted with a final personnel action unfavorable to him.
 
 
 34
 Until September, 1974, Bethel did not know whether he would suffer removal or some lesser penalty or, on the other hand, receive reinstatement and backpay.[92] Since, until then, the allegedly discriminatory conduct was inchoate for suit purposes, only by circumventing the statute could the employing agency require an earlier complaint.[93] Moreover, and all else aside, the Office of Human Rights violated its own regulation requiring it to notify Bethel of his right to appeal the decision on timeliness.[94]
 
 
 35
 Appellee further argues that Bethel also violated a regulation requiring that an informal complaint be made to an equal employment counselor within the Metropolitan Police Department before a formal complaint is submitted to the Office of Human Rights.[95] Since the point was not adverted to in the decision of the Office of Human Rights, it cannot avail anyone here,[96] and in any event we could not accept it. Even if the Office had expressly relied upon this violation of the rule, judicial review still would not be foreclosed,[97] for we perceive no palatable excuse for not referring Bethel's complaint to such a counselor.[98] It is the duty of the Office of Human Rights and as well of the Metropolitan Police Department to root out discrimination, and that responsibility is hardly discharged by reliance on technical miscues that could easily have been rectified without harm to anyone. The legislative purpose served by administrative recourse was fulfilled when the Office of Human Rights received prompt notice of Bethel's charge,[99] and was thus accorded sufficient opportunity to resolve his employment status administratively.[100]
 
 
 36
 In sum, Bethel reasonably attempted to bring his complaint before the administrative tribunal and it unreasonably refused to consider his claims. He could have done little more, and the agency could hardly have done less.
 
 B. Hemby's Complaint
 
 37
 Whether Hemby adequately met the requirements of Section 717 is a more difficult question. Our review is facilitated somewhat by the fact that we need only ascertain whether he did so as to any one instance of discrimination. If he did, the District Court erred in dismissing his suit; and whether Hemby can gain a remedy for any of the other episodes must be determined originally in the District Court.[101]
 
 
 38
 There is at least one instance of sufficient compliance with Section 717. In December, 1973, a trial board recommended that Hemby be removed from the police force. Before the Mayor acted upon this recommendation[102] perhaps to finalize it, or perhaps to order reinstatement and backpay Hemby complained to the Mayor that the Department was in violation of Title VII[103] by retaliating against him for having brought his lawsuit.[104] This was sufficient notice of Hemby's discrimination claim, for it "identi(fies) precisely the substance of the cause of action subsequently asserted and the factual basis of that claim."[105] If the complaint should have been addressed elsewhere, the Mayor, we think, had an obligation to refer Hemby to the proper forum.[106]
 
 
 39
 Though the Mayor had not disposed of the charge, Hemby amended his complaint in the District Court to include his allegation of discrimination. Since, at that point, there was no final administrative decision on that allegation, appellee could have successfully moved for dismissal. Now, however, 180 days have elapsed since the Mayor first learned of Hemby's discrimination grievance without any action thereon, and Hemby is free to sue in the District Court despite the lack of a decision by the Mayor.[107] We will not require Hemby to take the purely formal step of dismissing his complaint in the District Court and then refiling it just to gain a filing date more than 180 days later than that upon which he presented the charge to the Mayor.
 
 VI. CONCLUSION
 
 40
 As elucidated above, these cases must be returned to the District Court. To that end, we reverse the judgments appealed from. The District Court should retain jurisdiction but grant leave to appellants to invoke, within 30 days, the assistance of the Equal Employment Opportunity Commission.[108] In light of the time these proceedings have already consumed, we are confident that the Commission will expedite its consideration of appellants' charges to the fullest extent feasible. Should conciliation fail and appellants receive right-to-sue letters, the District Court will then have to deal with the issues not reached on these appeals.
 
 
 41
 So ordered.
 
 
 
 [1]
 Pub.L. No. 88-352, tit. VII, 78 Stat. 253 (1964), as amended, 42 U.S.C. §§ 2000e to 2000e-17 (1976)
 
 
 [2]
 Pub.L. No. 92-261, 86 Stat. 103 (1972), codified in various sections of 42 U.S.C. §§ 2000e to 2000e-17 (1976)
 
 
 [3]
 Bethel v. Cullinane, Civ. No. 75-0490 (D.D.C. July 9, 1976) (unreported order), Appellants' Appendix (App.) 13; Hemby v. Cullinane, Civ. No. 1012-73 (D.D.C. July 9, 1976) (unreported order), App. 11
 
 
 [4]
 42 U.S.C. § 2000e-5 (1976)
 
 
 [5]
 See Id
 
 
 [6]
 Bethel v. Cullinane, supra note 3, at 1, App. 13; Hemby v. Cullinane, supra note 3, at 1, App. 11
 
 
 [7]
 Bethel v. Cullinane, supra note 3, at 2, App. 14; Hemby v. Cullinane, supra note 3, at 1-2, App. 11-12
 
 
 [8]
 Bethel v. Cullinane, supra note 3, at 2, App. 14; Hemby v. Cullinane, supra note 3, at 1-2, App. 11-12. See Womack v. Lynn, 164 U.S.App.D.C. 198, 199-200, 504 F.2d 267, 268-269 (1974)
 
 
 [9]
 Discussed in Part III Infra
 
 
 [10]
 Discussed in Parts IV, V Infra
 
 
 [11]
 Discussed in Part II Infra
 
 
 [12]
 Part VI Infra
 
 
 [13]
 D.C.Code § 4-121 (1973)
 
 
 [14]
 As of January 2, 1975, the title of the chief executive officer of the District of Columbia Government was officially changed to "Mayor." D.C.Code §§ 1-131, 1-161(a) (Supp. IV 1977). Throughout this opinion, for convenience, we will refer to him by the present title although during the pre-1975 era of this litigation the official title was "Commissioner." See Id
 
 
 [15]
 Commissioner's Order No. 71-26, § 4 (Feb. 2, 1971), Fair Empl. Prac. Manual (BNA) 453:1725, superseded by Mayor's Order No. 75-230 (Oct. 31, 1975), Fair Empl. Prac. Manual (BNA) 453:1751. By order of the Mayor, informal complaints must first be presented to an equal employment opportunity counselor within the employing agency. Commissioner's Order No. 71-26, Supra, § 6a
 
 
 [16]
 Hemby was suspended from the force, without pay, from May 5, 1970, to June 27, 1970; from January 13, 1971, to April 23, 1971; from June 23, 1971, to April 13, 1973; and again from February 24, 1974, to September 22, 1974, when the Civil Service Commission held for reasons not germane to this case that he had been improperly suspended without pay pending the Mayor's final decision. He also alleges that the Department, by communicating false information to his employer, caused him to be fired from a job he had taken during one of his later suspensions. Hemby Amended Complaint PP 25-26, and that he was harassed by police officers while he was on suspension. Id. PP 35-39
 
 
 [17]
 Hemby Amended Complaint P 41. Such retaliation is expressly prohibited by § 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) (1976). See generally Kattan, Employee Opposition to Discriminatory Employment Practices: Protection from Reprisal under Title VII, 19 Wm. & Mary L.Rev. 217 (1977). Section 704 is specifically applicable only to complaints under § 706, but Congress made known its general desire that prior law define the scope of the rights granted federal employees under § 717, which was added in 1972. Sape & Hart, Title VII Reconsidered: The Equal Employment Opportunity Act of 1972, 40 Geo.Wash.L.Rev. 824, 856 (1972); see Morton v. Mancari, 417 U.S. 535, 547, 94 S.Ct. 2474, 2481, 41 L.Ed.2d 290, 298 (1974); Barnes v. Costle, 183 U.S.App.D.C. 90, 95, 561 F.2d 983, 988 (1977); Parks v. Dunlop, 517 F.2d 785, 787 (5th Cir. 1975). Moreover, § 717(a) is itself broad enough to ban retaliation since action so motivated and the consequences thereof would not have occurred "but for" discrimination. See Barnes v. Costle, supra, 183 U.S.App.D.C. at 97-98, 561 F.2d at 990-991
 
 
 [18]
 See note 8 Supra and accompanying text
 
 
 [19]
 Egelston v. State Univ. College of Geneseo, 535 F.2d 752, 755 (2d Cir. 1976); Johnson v. University of Pittsburg, 359 F.Supp. 1002, 1007 (W.D.Pa.1973); see Greene v. Carter Carburetor Co., 532 F.2d 125, 126 (8th Cir. 1976); Gates v. Georgia-Pac. Corp., 492 F.2d 292, 294-295 (9th Cir. 1974); Cf. Bonham v. Dresser Indus., Inc., 569 F.2d 187, 192 (3d Cir. 1977) (time period under Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 (1976), does not begin to run until employee knows or reasonably should know that employer has made final decision to terminate him and he has ceased to render services)
 
 
 [20]
 D.C.Code § 4-122 (1973)
 
 
 [21]
 See Shehadeh v. Chesapeake & Potomac Tel. Co., No. 76-1780 (D.C. Cir. Nov. 8, 1978), at 23-29 (discussing the continuing-violation doctrine); Ettinger v. Johnson (Ettinger II), 556 F.2d 692, 693 n.4 (3d Cir. 1977) (reserving question whether the continuing-violation doctrine is applicable to § 717 cases). We note in this connection that both appellants have alleged some forms of systemic discrimination. See Hemby Complaint P 29 (black officers more likely to be suspended without pay); Id. P 30 (blacks twice as likely to face trial boards); Bethel Complaint P 8 (other black officers sent without cause to hospital for psychiatric examinations in attempt to drive blacks off the force)
 
 
 [22]
 See Gill v. Monroe County Dep't of Social Servs., 547 F.2d 31, 32 (2d Cir. 1976)
 
 
 [23]
 Olson v. Rembrandt Printing Co., 511 F.2d 1228, 1232 (8th Cir. En banc 1975), quoting Cunningham v. Litton Indus., 413 F.2d 887, 889 (9th Cir. 1969)
 
 
 [24]
 42 U.S.C. § 2000e-16 (1976)
 
 
 [25]
 Id
 
 
 [26]
 Id. § 2000e-5. The scope of § 706 is defined in § 701. Id. § 2000e
 
 
 [27]
 Id. § 2000e-5(f)(1)
 
 
 [28]
 Note 2 Supra
 
 
 [29]
 Not all government employees are covered. Four classes of state and local government employees are excepted. 42 U.S.C. § 2000e(f) (1976). See generally Comment, The Coverage of Appointees of State and Local Elected Officials Under the Equal Employment Opportunity Act of 1972 and Congressional Power to Enforce the Fourteenth Amendment, 65 Geo.L.J. 809 (1977). In the federal domain, the legislation expressly exempts noncompetitive-service employees of the Judicial and Legislative Branches and arguably does not embrace excepted-service employees of the Executive Branch. Comment, The Coverage of Federal Excepted Service Personnel Under the Equal Employment Opportunity Act of 1972, 65 Geo.L.J. 837, 841 (1977) (concluding that most of the 400,000 excepted-service personnel are protected by Title VII); see 42 U.S.C. § 2000e-16(a) (1976)
 
 
 [30]
 H.R. 1746, 92d Cong., 1st Sess. (1971), reprinted in Subcomm. on Labor of the S. Comm. on Labor and Pub. Welfare, Legislative History of the Equal Employment Opportunity Act of 1972, 92d Cong., 1st Sess. 1 (1972) (hereinafter cited as "EEOA Legislative History")
 
 
 [31]
 Id. § 11, EEOA Legislative History, Supra note 30, at 2
 
 
 [32]
 Id. § 2(c), EEOA Legislative History, Supra note 30, at 2
 
 
 [33]
 Id
 
 
 [34]
 H.R.Rep.No.238, 92d Cong., 1st Sess. 26 (1971), U.S.Code Cong. & Admin.News 1972, pp. 2137, 2161
 
 
 [35]
 See S.Rep.No.415, 92d Cong., 1st Sess. 35 (1971); 118 Cong.Rec. 296-297 (1972) (comparison of S. 2515 and H.R. 1746)
 
 
 [36]
 Brief for Appellee at 18
 
 
 [37]
 S. 2515, 92d Cong., 1st Sess. § 2(2) (1971), EEOA Legislative History, Supra note 30, at 158
 
 
 [38]
 Civil Rights Act of 1964, § 701(b), 42 U.S.C. § 2000e(b) (1976)
 
 
 [39]
 S. 2515, Supra note 37, § 11, EEOA Legislative History, Supra note 30, at 186
 
 
 [40]
 117 Cong.Rec. 31965 (1971), EEOA Legislative History, Supra note 30, at 208
 
 
 [41]
 EEOA Legislative History, Supra note 30, at 406
 
 
 [42]
 Id. at 406-408
 
 
 [43]
 S.Rep.No.415, Supra note 35, at 14
 
 
 [44]
 Id. at 15
 
 
 [45]
 Sape & Hart, Supra note 17, at 843. The cease-and-desist enforcement provision was dropped from the bill just before passage
 
 
 [46]
 42 U.S.C. § 2000e(b)(1) (1976)
 
 
 [47]
 D.C.Code § 4-103 (1973), referring to 5 U.S.C. §§ 1302, 3303-3306, 3318-3321, 3361 (1976). Appellants also rely upon a statement in the legislative history indicating that § 717 includes "(a)ll employees subject to . . . Civil Service Commission control or protection . . . ," S.Rep.No.415, Supra note 35, at 45. We find this statement too cryptic to carry much weight in interpreting the statute
 
 
 [48]
 See Federal Personnel Manual, ch. 212, subch. 1-3(d) (1969); Brief of Amicus Civil Service Commission at 4. Section 2102 defines the competitive service as consisting of "positions in the government which are specifically included in the competitive service by statute." 5 U.S.C. § 2102 (1976). No statute designates officers of the Metropolitan Police Department as holders of such positions. See also 118 Cong.Rec. 4921 (1972) (remarks of Senator Cranston) (Library of Congress must be specifically dealt with because it "does not have positions in the competitive service and is not Generally bound by the Federal personnel manual" (emphasis supplied))
 
 
 [49]
 In classical logic, the law of the excluded middle, or Tertium non datur, holds simply that every alternation of a sentence with its negation is true. W. Quine, Philosophy of Logic 15, 83-87 (1970)
 
 
 [50]
 42 U.S.C. § 2000e-16(a) (1976)
 
 
 [51]
 See note 48 Supra
 
 
 [52]
 Brief for Civil Service Commission at 5; see Executive Orders 11246, 11478, reprinted in 42 U.S.C. § 2000e, historical note, at 1232-1236 (1976)
 
 
 [53]
 See D.C.Code § 4-103 (1973); 5 C.F.R. §§ 300.101-.104 (1976)
 
 
 [54]
 Love v. Pullman Co., 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679, 685 (1972); Bell v. Brown, 181 U.S.App.D.C. 226, 230, 557 F.2d 849, 853 (1977); Coles v. Penny, 174 U.S.App.D.C. 277, 283, 531 F.2d 609, 615 (1976)
 
 
 [55]
 Supplemental Memorandum of Equal Employment Opportunity Commission (as amicus curiae), at 4, hereinafter cited "EEOC Supp. Memo."
 
 
 [56]
 42 U.S.C. § 2000e-16(a) (1976). Some District units have been included by statute in the competitive service. See D.C.Code § 6-1203(e) (1973) (Officers of Civil Defense); Id. § 46-313(a) (Unemployment Compensation Board)
 
 
 [57]
 42 U.S.C. § 2000e(b)(1) (1976)
 
 
 [58]
 S.Rep.No.415, Supra note 35, at 16. (Civil Service Commission expected to work closely with Equal Employment Opportunity Commission). See also 117 Cong.Rec. 31961 (1971) (remarks of Representative Perkins) (proposal to give Equal Employment Opportunity Commission authority over Title VII complaints of federal employees does not preclude Civil Service Commission from continuing its own antidiscrimination programs subject to review by the former). And the Equal Employment Opportunity Commission has indicated that the mere fact that the Civil Service Commission developed examinations used by the Metropolitan Police Department does not mean that the two commissions will be adversaries, for "conciliation efforts would (normally) only be directed against the agency who actually administered or acted upon such a test." EEOC Supp. Memo., Supra note 55, at 5 n.4
 
 
 [59]
 42 U.S.C. § 2000e-16(a) (1976) (emphasis supplied)
 
 
 [60]
 See note 54 Supra and accompanying text
 
 
 [61]
 "Title VII is rife with procedural requirements which are sufficiently labyrinthine to baffle the most experienced lawyer, yet its enforcement mechanisms are usually triggered by laymen." Egelston v. State Univ. College at Geneseo, supra note 19, 535 F.2d at 754
 
 
 [62]
 Indeed, we paraphrased the statute overbroadly in dictum in Davis v. Washington, 168 U.S.App.D.C. 42, 44 n.2, 512 F.2d 956, 958 n.2, Rev'd on other grounds, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)
 
 
 [63]
 S.Rep.No.415, Supra note 35, at 16
 
 
 [64]
 This court has concluded that the administrative charge-filing requirement of § 706 "is not a jurisdictional step but is to be analogized to a statute of limitations . . . ." Laffey v. Northwest Airlines, Inc., 185 U.S.App.D.C. 322, 367-368, 567 F.2d 429, 474-475 (1976), Cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). See generally Developments in the Law Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1209 (1971). On the other hand, it has said in dictum that § 717's direction that an aggrieved governmental employee commence his "civil action within 30 days after receipt of notice of final administrative action . . . is jurisdictional." Hofer v. Campbell, 189 U.S.App.D.C. 197, 199, 581 F.2d 975, 977 (1978), relying upon Richardson v. Wiley, 186 U.S.App.D.C. 309, 569 F.2d 140 (1977). But see Barrett v. Civil Serv. Comm'n, 439 F.Supp. 216, 218 (D.D.C.1977). Neither Hofer nor Richardson involved a situation that would call for equitable tolling, so the court may not have ascribed to "jurisdictional" its most demanding meaning. In any event, it is § 706 that is implicated here, and we must accept Laffey as controlling on the nature of its charge-filing provision
 More broadly, all members of the Supreme Court have recently joined in opinions referring to Title VII's time exactions as statutes of limitation and not as immutable jurisdictional mandates. See United Air Lines v. McDonald, 432 U.S. 385, 392 & n.11, 97 S.Ct. 2464, 2468 & n.11, 53 L.Ed.2d 423, 430-431 & n.11 (1977); Id. at 397, 97 S.Ct. at 2471, 53 L.Ed.2d at 434 (dissenting opinion); Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 371-372, 97 S.Ct. 2447, 2457, 53 L.Ed.2d 402, 414 (1977); Cf. Dartt v. Shell Oil Co., 539 F.2d 1256, 1259-1261 (10th Cir. 1976), Aff'd by an equally divided Court, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977) (time limits in Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 (1976), held nonjurisdictional by analogy to Title VII case law). The Supreme Court has also held that not all members of a Title VII class action need exhaust their administrative remedies, United Air Lines v. McDonald, supra, 432 U.S. at 389 n.6, 97 S.Ct. at 2467 n.6, 53 L.Ed.2d at 429 n.6; Albermarle Paper Co. v. Moody, 422 U.S. 405, 414 n.8, 95 S.Ct. 2362, 2370 n.8, 45 L.Ed.2d 280, 294-295 n.8 (1975); accord, Macklin v. Spector Freight Sys., Inc., 156 U.S.App.D.C. 69, 75 n.11, 478 F.2d 979, 985 n.11 (1973), thus indicating that the statutory stipulation is not jurisdictional. Compare Weinberger v. Salfi, 422 U.S. 749, 764-767, 95 S.Ct. 2457, 2466-2468, 45 L.Ed.2d 522, 538, 540 (1975). Even courts referring to Title VII time limits as jurisdictional have actually treated them in a manner more appropriate for statutes of limitation. Compare Cutliff v. Greyhound Lines, Inc., 558 F.2d 803, 806 (5th Cir. 1977) (timely filing with Equal Employment Opportunity Commission is jurisdictional requirement under § 706) with Page v. United States Indus., Inc., 556 F.2d 346, 351 (5th Cir. 1977), Cert. denied, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978) (equitable considerations allow plaintiff to sue under § 706 although complaint was not filed within applicable 90-day period); Swain v. Hoffman, 547 F.2d 921, 923 & n.2 (5th Cir. 1977) (stating that exhaustion requirements under §§ 706 and 717 are jurisdictional but noting an exception where irreparable harm would be imposed upon complainant), and Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 928-929 (5th Cir. 1975) (§ 706 time limits are not to be treated "as inflexible 'jurisdictional' absolutes"). Thus, while it is clear that timely filing of an administrative charge is generally a precondition to maintenance of a Title VII suit, United Air Lines v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), we are equally certain that the definition of what is timely need not be determined with the harshness characteristic of jurisdictional requirements. See Recent Development, 65 Geo.L.J. 147, 157, 163 & n.98 (1976) (legislative history of 1972 amendments indicates that Congress did not consider time limits to be jurisdictional in nature.)
 In recently revising the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 (1970), as amended by Pub.L.No.95-256, 92 Stat. 189 (1978) which contains a 180-day notice requirement nearly identical to that in § 706 Congress expressly noted its intent to make that demand nonjurisdictional, and the Senate was willing to remove it it entirely in order to eliminate the possibility of judicial opinions treating it otherwise. S.Rep.No.493, 95th Cong., 2d Sess. 12-13, reprinted in (1978) U.S.Code Cong. & Admin.News, pp. 515, 516. A "written charge" requirement was substituted in conference, but "(t)he conferees agree(d) that the 'charge' requirement is not a jurisdictional prerequisite to maintaining an action under ADEA and that therefore equitable modification for failing to file within the time period will be available to plaintiffs under this Act," H.R.Rep.No.950, 95th Cong., 2d Sess. 12, reprinted in (1978) U.S.Code Cong. & Admin.News p. 515.
 
 
 [65]
 Coles v. Penny, supra note 54, 174 U.S.App.D.C. at 281, 531 F.2d at 613
 
 
 [66]
 Laffey v. Northwest Airlines, Inc., supra note 64, 185 U.S.App.D.C. at 367, 567 F.2d at 474
 
 
 [67]
 See note 54 Supra and accompanying text. The fact that the particular complainant might have had an attorney at one stage of the process is of no relevance, for the Act must be given a construction rendering its mechanisms workable in the hands of laymen generally. See Bell v. Brown, supra note 54, 181 U.S.App.D.C. at 230, 557 F.2d at 853
 
 
 [68]
 Coles v. Penny, supra note 54, 174 U.S.App.D.C. at 284, 531 F.2d at 616
 
 
 [69]
 Love v. Pullman Co., supra note 54, 404 U.S. at 526-527, 92 S.Ct. at 619, 30 L.Ed.2d at 684-685
 
 
 [70]
 Supplemental Memorandum of Appellee at 4 (emphasis in original)
 
 
 [71]
 118 Cong.Rec. 4941 (1972) (section-by-section analysis by Senator Williams)
 
 
 [72]
 Coles v. Penny, supra note 54, 174 U.S.App.D.C. at 282, 531 F.2d at 615, quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 461 (5th Cir. 1970); accord, Glus v. G. C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977); Mahroom v. Hook, 563 F.2d 1369, 1375 (9th Cir. 1977), Cert. denied, 436 U.S. 904, 98 S.Ct. 2234, 56 L.Ed.2d 402 (1978)
 
 
 [73]
 See Zambuto v. American Tel. & Tel. Co., 544 F.2d 1333, 1336 (5th Cir. 1977). See also Crosslin v. Mountain States Tel. & Tel. Co., 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971); Mitchell v. Mid-Continent Spring Co., 466 F.2d 24, 26-27 (6th Cir. 1972), Cert. denied, 410 U.S. 928, 93 S.Ct. 1363, 35 L.Ed.2d 589 (1973); Parker v. General Tel. Co., 476 F.2d 595, 596 (9th Cir. 1973)
 
 
 [74]
 Chandler v. Roudebush, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976)
 
 
 [75]
 Grubbs v. Butz, 169 U.S.App.D.C. 82, 87, 514 F.2d 1323, 1328 (1975), citing H.R.Rep.No.238, Supra note 34, at 22-26; S.Rep.No.415, Supra note 35, at 16
 
 
 [76]
 Cf. Mathews v. Eldridge, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18, 29 (1976). Under § 717, the aggrieved employee has the option of additionally seeking relief from the Civil Service Commission, but need not do so. 42 U.S.C. § 2000e-16(c) (1976)
 
 
 [77]
 42 U.S.C. § 2000e-16(c) (1976)
 
 
 [78]
 Brown v. GSA, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967-1968, 48 L.Ed.2d 402, 411 (1976)
 
 
 [79]
 Id
 
 
 [80]
 Adams v. Bailar, 426 F.Supp. 263, 264 (E.D.Va.1976)
 
 
 [81]
 Id.; see 42 U.S.C. § 2000e-16(b) (1976)
 
 
 [82]
 See note 54 Supra and accompanying text. See Hackley v. Roudebush, 171 U.S.App.D.C. 376, 382-394, 520 F.2d 108, 124-136 (1975)
 
 
 [83]
 See note 63 Supra and accompanying text. Whether the administrative process yet meets the expectations Congress had in 1972 remains an open question. See Hackley v. Roudebush, supra note 82, 171 U.S.App.D.C. at 409, 520 F.2d at 141 (opinion of Wright, J.)
 
 
 [84]
 See McCall v. Brooks, 432 F.Supp. 640 (1977) (suit filed within 30 days of notice from Civil Service Commission Review Board that administrative appeal was untimely is properly before court because complainant had reasonable belief that administrative appeal would be allowed and that belief led complainant to forego filing of suit within 30 days of original administrative decision); Barrett v. Civil Serv. Comm'n, 69 F.R.D. 544, 551-553 (D.D.C.1975). See also Grubbs v. Butz, supra note 75, 169 U.S.App.D.C. at 89, 514 F.2d at 1330; Olson v. Rembrandt Printing Co., supra note 23, 511 F.2d at 1232 (state deferral agencies may not frustrate federal remedy under Title VII by setting short limitation periods)
 
 
 [85]
 Brown v. GSA, supra note 78, 425 U.S. at 831, 96 S.Ct. at 1967, 48 L.Ed.2d at 411
 
 
 [86]
 Id. at 833, 96 S.Ct. at 1968, 48 L.Ed.2d at 411
 
 
 [87]
 A reasonable rule, for example, might be one that furthers the agency's "interests in effective and efficient administration." Weinberger v. Salfi, supra note 64, 422 U.S. at 766, 95 S.Ct. at 2467, 45 L.Ed.2d at 539. Compare Mathews v. Eldridge, supra note 76, a case involving a statute precluding federal court jurisdiction unless the administrative agency had reached a final decision, wherein the Court nonetheless refused to defer to the agency's judgment of the scope of exhaustion required under the statute. 424 U.S. at 330, 96 S.Ct. at 900, 47 L.Ed.2d at 30-31
 
 
 [88]
 See Part II Supra
 
 
 [89]
 See Commissioner's Order No. 71-26, Supra note 15, §§ 6a, 7a
 
 
 [90]
 The Metropolitan Police Department General Order 201-9, § IB1a (Dec. 1, 1971) (aggrieved individual must make informal complaint "within 15 days of the occurrence or discovery of the matter")
 
 
 [91]
 Compare 5 C.F.R. § 713.214(a)(1)(i) (1977) (time limits for "personnel actions" run from "effective date")
 
 
 [92]
 See Weise v. Syracuse Univ., 522 F.2d 397, 409-410 (2d Cir. 1975) (discriminatory act is not complete until internal procedures for reconsideration of personnel action have been completed.)
 We are mindful of the Supreme Court's decision in Electrical Workers Local 790 v. Robbins & Myers, Inc., 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), rejecting an argument that a termination was not complete until union grievance mechanisms had run their course. There the language of the union contract and the practice thereunder recognized the firing as a final discharge, automatically cutting off work, pay and benefits. Id. at 234-235, 97 S.Ct. at 446, 50 L.Ed.2d at 433-434. Contrastingly, in the two cases at bar, the trial boards' decisions were only "recommendations," immediate suspension without pay was not automatic, and the final decisionmaker could impose any one of a variety of sanctions.
 
 
 [93]
 Cf. Moore v. Sunbeam Corp., 459 F.2d 811, 826-827 & n.40 (7th Cir. 1972). In light of our resolution of this issue, we need not decide whether a complainant's ignorance of administrative time limits perhaps, even if unreasonable excuses a failure to comply therewith. Compare Ettinger II, supra note 21, 556 F.2d at 698 and Ettinger v. Johnson (Ettinger I), 518 F.2d 648, 653 (3d Cir. 1975)
 
 
 [94]
 Compare Commissioner's Order No. 71-26, Supra note 15, § 7c, with Letter of March 10, 1975, from James W. Baldwin, Director, Office of Human Rights, to Bethel
 
 
 [95]
 Commissioner's Order No. 71-26, Supra note 15, § 6a
 
 
 [96]
 Texas Gas Transmission Corp. v. Shell Oil Co., 363 U.S. 263, 270, 80 S.Ct. 1122, 1126-1127, 4 L.Ed.2d 1208, 1213 (1960); SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995, 1999 (1947); SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626, 633 (1943); Tygrett v. Washington, 177 U.S.App.D.C. 355, 362, 543 F.2d 840, 874 (1974)
 
 
 [97]
 Because we are able to determine on the basis of the facts before the District Court at the time of dismissal that the exhaustion requirement was sufficiently satisfied, we have no need to remand for factual hearings. Compare Ettinger I, supra note 93
 
 
 [98]
 A failure to comply with agency rules can be excused by the agency's violation of its duty to engage in efforts reasonably calculated to inform employees of all important procedural prerequisites. See Myles v. Schlesinger, 436 F.Supp. 8, 17 (E.D.Pa.1977); Cf. Coles v. Penny, supra note 54
 
 
 [99]
 Cf. Laffey v. Northwest Airlines, Inc., supra note 64, 185 U.S.App.D.C. at 365, 567 F.2d at 472; Dartt v. Shell Oil Co., supra note 64, 539 F.2d at 1261
 
 
 [100]
 Hackley v. Roudebush, supra note 82, 171 U.S.App.D.C. at 420 n.177, 520 F.2d at 152 n.177
 
 
 [101]
 See note 21 Supra
 
 
 [102]
 The Mayor, so far as we know, has still not disposed of Hemby's administrative appeal
 
 
 [103]
 See note 17 Supra
 
 
 [104]
 Submission of Hemby to Mayor 19-20 (received Mar. 7, 1974)
 Bethel similarly argues that he complained of discrimination to the Mayor, but only one sentence of his six-page letter to the Mayor alludes even in the slightest to racial mistreatment. See Letter of May 7, 1972 from Bethel to Commissioner Washington at 3 ("Inspector Dials has a reputation for sending black officers to the Hospital Center to see if they have been using drugs, this I can prove"). We believe that this passing reference did not reasonably inform the Mayor that Bethel was complaining of discrimination prohibited by Title VII.
 
 
 [105]
 Recent Development, Supra note 64, at 164, citing Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 467-468 & n.14, 95 S.Ct. 1716, 1723-1724 & n.14, 44 L.Ed.2d 295, 305-306 & n.14 (1975); accord, Beasley v. Griffin, 427 F.Supp. 801, 803-804 & n.2 (D.Mass.1977), citing Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891, 898 (D.Me.1970); see Jenkins v. United Gas Corp., 400 F.2d 28, 30 n.3 (5th Cir. 1968); Ward v. Califano, 443 F.Supp. 89, 90-91 (D.D.C.1977); Stockton v. Harris, 434 F.Supp. 276 (1977); Pittman v. Anaconda Wire & Cable Co., 408 F.Supp. 286, 291-292 (E.D.N.C.1974). Because the substance of the grievance was adequately communicated, appellee cannot rely upon such cases as Freeman v. Shultz, 152 U.S.App.D.C. 16, 18-19, 468 F.2d 120, 122-123 (1972), in which the defendant "was not directly confronted with the plaintiffs' charges."
 
 
 [106]
 Commissioner's Order No. 71-26, Supra note 15, § 10g. It would seem quite inequitable for a governmental official to permit the filing of a discrimination charge with his office and then, after the time for proper filing with another agent of the same government has expired, to reject the charge as having been filed in the wrong place. Cf. Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 232-233, 79 S.Ct. 760, 761-762, 3 L.Ed.2d 770, 771-773 (1959); Laffey v. Northwest Airlines, Inc., supra note 64, 185 U.S.App.D.C. at 367, 567 F.2d at 474
 
 
 [107]
 Civil Rights Act of 1964, § 717(c), 42 U.S.C. § 2000e-16(c) (1976)
 
 
 [108]
 Or the designated local agency, see Id. § 706(c) 42 U.S.C. § 2000e-5(c), which, ironically, is the Office of Human Rights