Abdul Hakim SADRUDDIN, Plaintiff,

v.

CITY OF NEWARK, et al., Defendants.

Raymond T. Hunter, Plaintiff,

v.

City of Newark, et al., Defendants.

Ibrahim Abdul–Haqq, Plaintiff,

v.

City of Newark, et al., Defendants.

Civil Action No. 98–361.

United States District Court,
D. New Jersey.

Feb. 11, 1999.

Michelle Hollar-Gregory, Corp. counsel, Newark, NJ, Phillip R. Dowdell, Asst. Corp. Counsel, Newark, NJ, for City of Newark, et al.

Kenneth Hall, Newark, NJ, for Abdul Hakim Sadruddin and Raymond Hunter.

Jeffrey E. Fogel, Nutley, NJ, for Ibrahim Adbul-Haqq.

## OPINION

WALLS, District Judge.

Defendant City of Newark and individual defendants move to dismiss the complaint of plaintiffs Ibrahim Abdul–Haqq, Abdul Hakim Sadruddin and Raymond Hunter for failure to state a claim upon which relief can be granted. The motion is denied.

### Factual Background

Ibrahim Abdul–Haqq ("Haqq") had been employed as a Newark City Firefighter and Battalion Chief since 1983. The Newark Fire Department ("the Department") maintains an employment regulation, General Order D–5 ("Order D–5"), which prohibits the wearing of beards, goatees or other hair on or about the chin or lower jawbone area of the employee. In October 1994, Haqq requested from defendant Stanley J. Kossup ("Kossup"), the director of the Department, an exemption from that regulation because, as a male adherent to the Islamic faith, he was required to wear facial hair or a beard. Kossup refused, contending that Order D–5 was necessary to safely and effectively wear the self-contained breathing apparatus ("SCBA") used by Newark firefighters. On October 25, 1994, Haqq was ordered to shave his facial hair. (Am.Compl., ¶ 13). Upon his refusal, on October 26, 1994, he was suspended from the Department. *Id.* The suspension ended on December 7, 1994, and he filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination in violation of Title VII of the Civil Rights Act of 1964,

as amended ("Title VII"), 42 U.S.C. § 2000e et seq. *Id.* at 14. On September 29, 1995, the EEOC, after an investigation, issued a determination of probable cause with respect to the complaint. *Id.* at 16. On February 7, 1996, the EEOC determined that its efforts to conciliate the charge were unsuccessful. (Ex. B, EEOC Correspondence).

On November 22, 1996, Haqq was terminated from the Department after a disciplinary hearing. *Id.* at 18. The dismissal was based, in part, on his refusal to shave his beard. On November 27, he filed another complaint with the EEOC, charging that his dismissal was in violation of Title VII and in retaliation for his previous complaint with the Commission. *Id.* at 19. On December 24, 1996, the EEOC issued a determination of probable cause in connection with the November 22 termination. *Id.* at 21. On October 22, 1997, the EEOC issued a right-to-sue letter to the plaintiff. On January 28, 1998, Haqq filed a complaint in this Court against the City of Newark, the Newark Fire Department and Stanley J. Kossup, individually and as director of the Newark Fire Department, (collectively, "the defendants"). The complaint alleges violations of Title VII, The Civil Rights Act of 1991, 42 U.S.C. § 1983, 42 U.S.C. § 1981 and The New Jersey Law against Discrimination ("NJLAD"), N.J.S.A. 10–5 et seq. The plaintiff seeks to enjoin the defendants from alleged unlawful discriminatory employment practices based on religious beliefs and to redress deprivation and violation of religious rights guaranteed under the First and Fourteenth Amendments to the United States Constitution, and the New Jersey Constitution. On June 18, 1998, this Court consolidated the Haqq matter with another matter, *Abdul Hakim Sadruddin and Raymond T. Hunter v. City of Newark, et. al.* The defendants have filed the present motion to dismiss, which is considered a motion to dismiss the complaints of all plaintiffs.

### Legal Standard

On a Rule 12(b)(6) motion, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994). The question is whether the plaintiff can prove any set of facts consistent with his allegations that will entitle him to relief, not whether he will ultimately prevail. *See Hishon v. King and Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Washington Legal Found. v. Massachusetts Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. *See* Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### Analysis

1. *Failure to Plead Basic Elements of Religious Discrimination under Title VII*

The defendants first move to dismiss the plaintiffs' claim for failure to plead the basic elements of prima facie religious discrimination under Title VII. Title VII makes it unlawful for an employer to discriminate against an employee based on the employee's religion. 42 U.S.C. § 2000e–2(a)(1). The term "religion" includes all aspects of religious observances and practices, as well as beliefs, unless the employer can demonstrate that he is unable to reasonably accommodate the employee's religious observances or practices without undue hardship on the conduct of the employer's business. 42 U.S.C. § 2000e(j); *See also, Little v. Wuerl,* 929 F.2d 944, 949 (3rd Cir.1991).

In a Title VII religious discrimination case, the plaintiff must show that:

(1) he or she had a bona fide belief that compliance with an employment requirement would be contrary to his or her religious belief or practice; (2) he or she informed the employer about the conflict; and (3) he or she was discharged or penal-

ized for failing to comply with the conflicting employment requirement.

*See Venters v. City of Delphi,* 123 F.3d 956 (7th Cir.1997); *Brener v. Diagnostic Center Hospital,* 671 F.2d 141, 144 (5th Cir.1982).

■■■ As support for their contention that the plaintiffs have not plead the basic elements of a Title VII religious discrimination action, the defendants list various regulatory and other safety rules in support of Order D–5. The plaintiffs' pleadings cannot be overcome by the defendants' defense of the virtues and validity of the employment requirement at issue. These virtues go to the reasonableness or restrictiveness of Order D–5 rather than to the sufficiency of the plaintiffs' pleadings. Haqq has plead allegations which, with their inferences, support a claim of violation of Title VII. He insists that compliance with Order D–5 is contrary to his religion, that he informed Kossup of this conflict and that he was both penalized and discharged for failing to comply with the employment requirement. In addition, a finding of probable cause by an administrative agency, such as the EEOC, though not determinative, is admissible to help establish a prima facie case of discrimination in violation of Title VII. *See Philbrook v. Ansonia Board of Educ.,* 757 F.2d 476, 481 (2d Cir. 1985); *Smith v. Universal Servs.,* 454 F.2d 154, 157–58 (5th Cir.1972). Haqq has received two findings of probable cause from the EEOC in this matter. Based on the record before us, the Court finds that the plaintiff has plead the basic elements of religious discrimination under Title VII.

2. *Whether There Was Proper Service of Process*

The defendants further insist that the plaintiff's complaint be dismissed because service of process did not comply with the requirements of Fed.R.Civ.P. 4(c)(2) and 4(j)(2). Rule 4(j)(2) directs that "service upon a . . . municipal corporation . . . shall be effective by delivering a copy of the summons and the complaint to its chief executive officer or by serving the complaint in the manner prescribed by the law of that state for the service of or other like process upon any such defendant." The applicable law in New Jersey, N.J.S.A. 2A:15–36, requires that:

> When an action is commenced . . . against a county or municipality the complaint and the summons or other process shall be served forthwith, after its delivery to the sheriff or other officer for service, on the director or clerk of the board of chosen freeholders as the case may be, and a copy thereof shall be left with such office.

■■■ The plaintiff served process on the City of Newark's Law Department rather than the Clerk, and therefore, the defendants argue, service was not properly effected in violation of 2A:15–36. However, Rule 4(j)(2) also allows for service upon the "chief executive officer." The plaintiff's service of process placed the defendant Mayor's name under "individual . . . to . . . serve." That service on the city's chief executive officer was accepted by an attorney in the City's law department does not render the service ineffective. The general rule is that service of process upon an authorized agent or attorney is as valid and binding as statutory service upon the principal. *Cf. United States v. Davis,* 38 F.R.D. 424, 425–26 (N.D.N.Y. 1965); *Union City v. Capitol–Theatre Amusement Co., et al.,* 26 N.J. Misc. 102, 57 A.2d 226, 228 (1948); *Purcell v. State (Bennett, Prosecutor),* 68 N.J.L. 519, 520–21, 53 A. 235 (1902). The service of process contained the Mayor's name as representative of the City of Newark. An attorney in the Law Department, as a representative of the City, accepted service on behalf of the Mayor. Such service of process on an authorized attorney in the City's law department is as valid and binding as service on the Mayor as representative and on the City as principal.

The defendants also rely on *Wells v. City of Portland,* for the claim that the plaintiff's service was invalid. 102 F.R.D. 796, 799 (1984). Service of process had been made on an administrative assistant in the Portland City Attorney's office. *Id.* The Court held that service had to be quashed pursuant to the Oregon Rule of Civil Procedure which required that service be made on, among other persons, the City's attorney. *Id.* Here, the plaintiff did not make service on an administrative assistant, but rather effected

service upon an attorney on the staff of the Newark Corporation Counsel. Under the *Wells* standard the plaintiff's service of process satisfied Fed.R.Civ.P. 4(j)(2). The defendant's motion to dismiss based on improper service of process is denied.[1]

### 3. *Whether the Discrimination Claim is Time-barred*

■ The defendants state that any claim of discrimination should be dismissed as time-barred under 42 U.S.C. § 2000e–5(e)(1), which requires that a "charge shall be filed by or on behalf of the person aggrieved within three-hundred days after the alleged unlawful employment practice occurred...." The defendants argue that since the EEOC failed to conciliate the claim based on Haqq's suspension on February 7, 1996, the 300 day time limit of § 2000e–5 began on that date and required that plaintiff file a complaint based on the suspension by October or November 1996. Haqq did not file his complaint until January 28, 1998. The defendants argue that this means that any claim based on the suspension is time-barred. This argument is not clear, since it presupposes the failure of the EEOC to conciliate as the "unlawful employment practice" which caused the time period to begin to run. This Court is more persuaded by the reasoning of a Fifth Circuit opinion, *Page v. U.S. Indus., Inc.,* 556 F.2d 346 (5th Cir.1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978). A black female front desk clerk was discharged from her employment with a New Orleans hotel. *Id.* at 350. She filed a timely complaint with the EEOC, which issued a finding of reasonable cause. *Id.* The EEOC eventually sent a letter informing her that its conciliation efforts had failed. *Id.* The district court agreed with the defendants that the letter of nonconciliation was sufficient to begin the running of the statutory time period for filing suit. *Id.* The circuit court disagreed, ruling that "to begin the ... limitation period, the complainant must receive notice that the EEOC has completed its administrative efforts." *Id.* The court went on to say that "the [non-conciliation] letter only related

that conciliation efforts had failed; it did not inform [the plaintiff] that the EEOC had decided not to sue." *Id.* Similarly, the time period for the plaintiff here to file his suit did not begin when he received the non-conciliation letter in February, 1996.

According to the plaintiff, the suspension and the circumstances leading up to the suspension were not an assortment of unrelated incidents, but a chain of continuous and connecting discriminating episodes which culminated with his termination. *Cf. Bethel v. Jefferson,* 589 F.2d 631, 636 (D.C.Cir.1978); *Bonham v. Dresser Indus., Inc.,* 569 F.2d 187, 192 (3d Cir.1977) (finding that the time period under the Age in Discrimination Act, 29 U.S.C. §§ 621–634 (1976), does not begin to run until the employee knows or reasonably should know that employer has made final decision to terminate him and he has ceased to render services). Once again, taking all facts and the inferences therefrom in the light most favorable to the non-moving party, the Court agrees with this reasoning and finds that these claims are timely-made.

### 4. *Whether the Complaint is Time-barred*

■ The time for filing an employment discrimination complaint begins when the employee has notice of an EEOC decision, which usually occurs on the date the employee receives the right-to-sue letter. *See Mosel v. Hills Department Store, Inc.,* 789 F.2d 251, 252 (3d Cir.1986). Upon receipt of the right-to-sue letter, a plaintiff has ninety days within which to file suit. 42 U.S.C. § 2000e–5(f)(1); *See also Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 465, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Plaintiff Haqq received the right-to-sue letter about October 22, 1997. (*See* Compl., ¶ 22). He filed the Complaint in the present suit ninety-eight days later on January 28, 1998. The 90–day rule is not a jurisdictional predicate, and a court can extend the limitations period if there is a recognized equitable consideration. *Compare Id.* at 253; *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d

---

1. Although the defendants allege that the plaintiffs violated Fed.R.Civ.P. 4(c)(2), their brief does

not explain how the plaintiffs violated this rule.

Cir.1984). One such equitable consideration is that a complainant brings suit as a *pro se* litigant. A liberal interpretation is given the procedural requirements of a lay-initiated proceeding under § 2000e–5. *See Huston v. General Motors,* 477 F.2d 1003, 1008 (8th Cir.1973). Plaintiff Haqq began these proceeding as a *pro se* litigant. Although he later retained an attorney, that a lay complainant might have an attorney at a certain stage of process is irrelevant to determine if equitable principles should be used to extend the time periods of § 2000e–5. *See Bethel v. Jefferson,* 589 F.2d 631, 642 (D.C.Cir.1978). Equitable considerations may allow a plaintiff to sue under § 2000e–5 although the complaint was not filed within the ninety-day period. *See Page v. United States Indus., Inc.,* 556 F.2d 346, 351 (5th Cir.1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978). Because of the plaintiff's original lay status and the short delay period of eight days, the Court will permit the plaintiff's discrimination claim despite the procedural infirmity.

5. *Whether the Discrimination Claim is precluded under Res Judicata and Collateral Estoppel*

■ Lastly, the defendants state that the plaintiff's claim is precluded, under res judicata and collateral estoppel, by the decision of the Administrative Law Judge in *In the Matter of Yasin,* OAL Docket No. CSV 3764–97 (CSV 11443–95 ON REMAND). Under res judicata, a cause of action that was finally determined between parties on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding. *SeeRoberts v. Goldner,* 79 N.J. 82, 85, 397 A.2d 1090 (1979). Collateral Estoppel is a branch of the broader doctrine of res judicata which bars relitigation of any issue actually determined in an earlier action, generally between the same parties, although involving a different claim or cause of action. *See State v. Gonzalez,* 75 N.J. 181, 186, 380 A.2d 1128 (1977). *Yasin* involved the issue of whether the Newark Fire Department justifiably suspended a Muslim firefighter for his refusal to shave his beard. The Administrative Law Judge found that the suspension was justified in light of the fire department's safety concerns.

■ The plaintiffs assert that because they were not parties to the *Yasir* action, the present suit is not precluded under either of the above-mentioned doctrines. With regard to the issue of res judicata, the defendants argue that although the present plaintiffs were not parties to the action, they are in "privity" with the *Yasir* plaintiff since they are all firefighters (or at least are representing the interests of firefighters). However, privity requires that the parties have such a connection of interest in the litigation and the subject matter that reason and justice precludes a relitigation of the issues. *See Hotel and Restaurant Employees & Bartenders Int'l Union Local 54 v. Read,* 641 F.Supp. 757, 761 (D.N.J.1986) (quoting *Hudson Transit Corp. v. Antonucci,* 137 N.J.L. 704, 707, 61 A.2d 180 (1948)); *Bango v. Ward,* 12 N.J. 415, 422, 97 A.2d 147 (1953). That is not the case here. *Yasir* concerned whether the fire department was justified to suspend a firefighter twelve days. Here, the plaintiff, not a party to *Yasir,* is challenging a complete end to his employment with the department.

The defendants assert that "New Jersey courts follow the rule of collateral estoppel, or as it is also known, issue preclusion, described in the Restatement (Second) of Judgements." The Restatement instructs that "when an issue of fact or law is actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the parties, whether in the same or a different claim." Restatement (Second) of Judgements § 27 at 250. However, the Restatement also advises that issue preclusion cannot be invoked when "... there is a clear and convincing need for a new determination of the issue ... because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action." *Id.* § 28 at 273; *see also Hernandez v. Region Nine Housing Corp.,* 146 N.J. 645, 660, 684 A.2d 1385 (1996). The interests of reason and justice, as well as the adverse effect of upholding the termination of the plaintiff preclude the invocation of collateral estoppel or res judicata.

*Conclusion*

For the foregoing reasons, the Court denies the defendants' motion to dismiss.

**SO ORDERED.**

**ORDER**

Defendant City of Newark and individual defendants move to dismiss the complaint of plaintiffs Ibrahim Abdul–Haqq, Abdul Hakim Sadruddin and Raymond Hunter for failure to state a claim upon which relief can be granted. Upon consideration of the submissions of the parties and for the reasons stated in the accompanying opinion,

The Court **denies** the defendants' motion.

**SO ORDERED.**